**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| VINCENT E. TUK, as surviving spouse of Nancy Lee Tuk, deceased, | |
| Plaintiff, | CIVIL ACTION NO.: 2:19-cv-134 |
| v. | |
| U.S. XPRESS, INC.; and MICHAEL LYNN CARTER | |
| Defendants. | |
| NATHAN CORRELL, individually; and CAITLYN CORRELL, | |
| Plaintiffs, | CIVIL ACTION NO.: 2:19-cv-135 |
| v. | |
| U.S. XPRESS, INC.; and MICHAEL LYNN CARTER | |
| Defendants. | |
| COURTNEY CORRELL, | |
| Plaintiff, | CIVIL ACTION NO.: 2:19-cv-136 |
| v. | |
| U.S. XPRESS, INC.; and MICHAEL LYNN CARTER | |
| Defendants. | |

JENNIFER CORRELL,

        Plaintiff,

      v.

U.S. XPRESS, INC.; and MICHAEL LYNN
CARTER

        Defendants.

CIVIL ACTION NO.: 2:19-cv-162

# O R D E R

This matter is before the Court on Plaintiffs' Motion to Exclude Certain Opinions of Defendants' Proposed Expert James Sloan and Defendants' Motion to Exclude Thomas W. Cauthen, Jr. as an Expert Witness and Motion to Exclude Expert Testimony of Sean Alexander. Docs. 60, 62, 63.[1]  The parties have fully briefed the issues. Docs. 71–73, 80–82. Additionally, the Court held a hearing on these Motions on February 11, 2021, at which counsel for both Plaintiffs and Defendants appeared.  Doc. 88.

For the following reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion to Exclude Certain Opinions of Defendants' Proposed Expert James Sloan, Defendants' Motion to Exclude Thomas W. Cauthen, Jr. as an Expert Witness, and Defendants' Motion to Exclude Expert Testimony of Sean Alexander.  Docs. 60, 62, 63.  All three witnesses—Sloan,

---

[1]  As indicated by the caption, this Order addresses identical Motions filed in four parallel cases, 2:19-cv-134, -135, -136, and -162.  The cases all stem from the same series of car accidents, as described in the background section, but are brought on behalf of different Plaintiffs.  The parties have agreed to address pre-trial motions, such as the one presently before the Court, together.  However, all docket numbers refer to the docket in Case Number 2:19-cv-134.  Additionally, The Court **DIRECTS** the Clerk of Court to docket this Order in the other three cases to reflect this Court's ruling on the separately filed Motions in all four of these related cases."

      Specifically, for Case Number 2:19-cv-135, Documents 59, 61, and 62 are **GRANTED in part** and **DENIED in part**.  Additionally, for Case Number 2:19-cv-136, Documents 57, 58, and 60 are **GRANTED in part** and **DENIED in part**.  Finally, for Case Number 2:19-cv-162, Documents 30, 32, and 33 are **GRANTED in part** and **DENIED in part**.

Cauthen, and Alexander—may generally testify on matters consistent with this Order and other applicable Rules but shall not testify on the following topics:

***Defendants' Expert James Sloan:***

- the severity the collision between Plaintiffs and Arnaldo Gonzalez;

- whether Plaintiff J. Correll "primarily contributed" to the accident;

- Defendant Carter's expected reaction times;

- whether Defendant Carter "successfully" or "timely" navigated Gonzalez pulling into the emergency lane; and

- whether Defendant Carter "timely" reacted to Plaintiffs' pick-up truck stopped in the center lane.

***Plaintiffs' Expert Sean Alexander:***

- whether braking, instead of changing lanes, would have been a "better," or the "best" option, for Defendant Carter; and

- Defendant Carter would have avoided hitting Plaintiffs if he had not changed lanes.

***Plaintiffs' Expert Thomas Cauthen:***

- whether Defendant Carter caused the accident;

- Defendant Carter's falsification of medical forms; and

- causation.

Additionally, Plaintiffs' expert Cauthen is expressly permitted to testify on whether Defendant U.S. Xpress' hiring and retention violated industry standards and whether Defendant Carter acted safely, based on industry standards, by failing to brake and instead choosing to change lanes.

## BACKGROUND

These cases arise out of a series of traffic collisions involving Plaintiffs and two different tractor-trailers. On November 27, 2017, Plaintiffs were traveling in a Dodge Ram pickup truck on Interstate 95, driven by Plaintiff Jennifer Correll. Doc. 1. The pickup truck experienced

mechanical issues, and Plaintiffs pulled off the highway into the emergency lane.  Id.  While merging back into traffic from the emergency lane, their pickup truck was struck from behind by a Volvo tractor-trailer driven by Arnaldo Gonzalez for Vika Logistics, ("Collision #1").  Id.  After Gonzalez struck Plaintiffs, he began to brake and moved to the emergency lane.  Collision #1 pushed Plaintiffs into the center lane where they remained stopped.  Shortly after Collision #1, Plaintiffs' pick-up truck was struck by a Freightliner tractor-trailer driven by Defendant Michael Lynn Carter for Defendant US Xpress, Inc., as it was stopped in the center lane ("Collision #2").[2]  Id.

The parties have each identified experts they wish to have testify at trial and reciprocal challenges to those experts.  See Docs. 60, 62, 63.  Plaintiffs challenge Defendants' accident reconstruction witness, James Sloan.  Doc. 60.  Plaintiffs argue Defendants' disclosures under Federal Rule of Civil Procedure 26 regarding Sloan were inadequate and raise challenges to his testimony under Rule 702 and Daubert.  Id.  Defendants challenge Plaintiffs' witnesses Sean Alexander (accident reconstruction) and Thomas Cauthen (hiring and safe driving practices in the trucking industry) under Rule 702 and Daubert.  Docs. 62, 63.

At the hearing and throughout the briefing, Plaintiffs made several concessions about what Cauthen and Alexander will testify.  Plaintiffs concede Cauthen is not qualified to offer expert testimony on causation.  Plaintiffs also withdrew Cauthen's opinions regarding Defendant Carter's medical disclosure, acknowledging the disclosure could not have provided a pre-wreck reason for Defendant Carter's termination.  Doc. 72 at 12 n.6, 14–15.  Similarly, Plaintiffs concede Alexander should not be permitted to describe whether braking would have been a

---

[2]     Plaintiffs initially also sued Gonzalez, Vika Logistics, LLC, and Starr Indemnity & Liability Company.  Doc. 1.  However, those claims settled, and the Court granted the parties' stipulation of dismissal.  Doc. 50.  Thus, only the claims against Defendants U.S. Xpress and Carter remain pending.  Id.

"better" or the "best" option for Defendant Carter.  Accordingly, the Court **GRANTS as unopposed** these portions of Defendants' Motions to Exclude Cauthen and Alexander's testimony without further analysis or discussion.[3]

<h3 style="text-align:center">LEGAL STANDARDS</h3>

I.      **Federal Rule of Civil Procedure 26**

Pursuant to Rule 26(a)(2)(B), an expert witness report must contain, among other things, the facts or data considered by the witness in forming his opinions.  Fed. R. Civ. P. 26(a)(2)(B)(ii).  A report must do more than promise to reveal the information Rule 26(a)(2)(B) requires.  See Sommers v. Hall, No. CV408-257, 2010 WL 3463608, at *3 (S.D. Ga. Sept. 1, 2010) (stating a "'maybe someday I'll tell you' approach mocks the very purpose of Rule 26(a)(2)").  Additionally, a party has a continuing obligation to supplement its report.  Fed. R. Civ. P. 26(a)(2)(E).  However, the duty to supplement a report does not facilitate an end-run around the initial duty of complete and timely disclosure.  Sommers, 2010 WL 3463608, at *3.  Accordingly, glaring omissions in an original expert witness report cannot be cured by a supplement.  Finch v. Owners Ins. Co., CV 616-169, 2017 WL 6045449, at *3 (S.D. Ga. Dec. 6, 2017) (citing Goodbys Creek, LLC v. Arch Ins. Co., No. 3:07-cv-947, 2009 WL 1139575, at *2 (M.D. Fla. Apr. 27, 2009)).

When a party fails to meet a Rule 26(a)(2)(B) disclosure deadline, it must demonstrate its mistake was either justified or harmless.  Fed. R. Civ. P. 37(c)(1); Mitchell v. Ford Motor Co., 318 F. App'x 821, 824 (11th Cir. 2009) (quoting Leathers v. Pfizer, Inc., 233 F.R.D. 687, 691 (N.D. Ga. 2006) ("The burden of establishing that a failure to disclose was substantially justified

---

[3]     However, Plaintiffs contend Alexander should be permitted to testify regarding the driving decisions Defendant Carter made and the potential scenarios if he had made other decisions.  The Court discusses these topics herein.

5

or harmless rests on the nondisclosing party.")).  An untimely disclosure is justified if it was reasonable to believe timely disclosure was unnecessary.  <u>Finch</u>, 2017 WL 6045449, at \*3 (citing <u>Durden v. Citicorp Trust Bank, FSB</u>, Case No. 3:07-cv-974, 2008 WL 11318338, at \*3 (M.D. Fla. Nov. 25, 2008)).  An untimely disclosure is harmless if an opposing party suffers no prejudice.  <u>Id.</u>

## II.   Federal Rule of Evidence 702 and <u>Daubert</u>

The United States Supreme Court's holding in <u>Daubert v. Merrell Dow Pharmaceutical, Inc.</u>, 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony.  Fed. R. Evid. 702; <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999).  In this Circuit, courts routinely look to three elements to determine if an expert is qualified under <u>Daubert</u> and Rule 702.  As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted).  "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate."  <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003).  The trial court has broad latitude in evaluating each of these three factors.

As to qualifications, an expert may be qualified "by knowledge, skill, training, or education." Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193 (11th Cir. 2010). The expert need not have experience precisely mirroring the case at bar in order to be qualified. Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001). However, where an expert does have experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony. Frazier, 387 F.3d at 1261.

As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Daubert, 509 U.S. at 593–94. However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis." Quiet Tech., 326 F.3d at 1341. At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate." Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted).

Finally, as to the third Daubert factor, expert testimony is likely to assist the trier of fact to the extent "it concerns matters beyond the understanding of the average lay person and logically advances a material aspect of the proponent's case." Kennedy v. Elec. Ins. Co., Case No. 4:18cv148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert, 509 U.S. at 591); Frazier, 387 F.3d at 1262–63. Rule 702 permits experts to make conclusions based on competing versions of the facts, but those conclusions must still assist the trier of fact by explaining something that is "beyond the understanding of the average lay person.'" Jackson v. Catanzariti, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing

Frazier, 387 F.3d at 1262).  Expert testimony generally will not help the trier of fact "when it offers nothing more than what lawyers for the parties can argue in closing arguments."  Id. (quoting Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005)).  Such testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."  Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence."  Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).  However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence."  Quiet Tech., 326 F.3d at 1341.  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596.

## DISCUSSION

### I.    Defendants' Expert James Sloan

Plaintiffs challenge Defendants' expert James Sloan on two grounds.  First, they argue Sloan should be excluded because his expert Report is deficient under Rule 26(a)(2).  Doc. 60 at 4.  Second, Plaintiffs contend Sloan should be excluded under Daubert.  Id.

#### A.    Rule 26 Challenge

Plaintiffs challenge Sloan's Report under Federal Rule of Civil Procedure 26(a)(2), arguing it is deficient under Rule 26(a)(2) and, thus, the Court should exclude his opinions

pursuant to Federal Rule of Civil Procedure 37.  Doc. 60 at 4.  Plaintiffs argue Sloan failed to explain the bases and reasons for many of his opinions and failed to disclose the facts and data he considered in forming them in his Report, violating Rule 26(a)(2).  Id. at 5, 10–11.  Plaintiffs contend Sloan's use of "generic methodology" and his statement he will use "accepted accident reconstruction principles, methodologies, and techniques" is insufficient to meet Rule 26(a)(2)'s requirements.  Id.  Plaintiffs further complain Sloan failed to include the formulas, studies, calculations standards, data, or citations to reference materials in his Report he used to form his conclusions.

### 1.    *Sloan's Report complies with Rule 26.*

The methodology section in Sloan's Report is thin, doc. 60-1 at 51; however, Sloan also includes a section outlining the materials he reviewed (numbering 23), as well as the activities he conducted (numbering 12) in forming his opinions.  Id. at 52–53.  The materials he reviewed are the data and facts he relied on in reaching his conclusions.  Similarly, the activities conducted relate to the bases for Sloan's opinions.  Thus, Sloan's Report complies with Rule 26, even if Sloan omitted some calculations or information.

That is, Sloan's Report is not facially inadequate.  "The content of an expert report is adequate 'when it is sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.'"  Goodbys Creek, LLC v. Arch Ins. Co., No. 3:07-CV-947, 2009 WL 1139575, at *1 (M.D. Fla. Apr. 27, 2009) (citation omitted).  Sloan sufficiently identifies the data and facts he relied on and explains the activities he conducted to form his opinions.  Doc. 60-2 at 51–53.  While Sloan did not provide every calculation he performed, Rule 26 does not require him to do so.  See Kleiman v. Wright, No. 18-cv-80176, 2020 WL 6729362, at *7 (S.D. Fla. Nov. 16, 2020) (quoting Etherton

v. Owners Ins. Co., No. 10-cv-00892, 2011 WL 684592, at *2 (D. Colo. Feb. 18, 2011)); McCoy v. Whirlpool Corp., 214 F.R.D. 646, 652 (D. Kan. 2003).  Similarly, Rule 26(a)(2)(B) "does not require a report recite each minute fact or piece of scientific information that might be elicited on direct examination to establish the admissibility of the expert opinion under Daubert.  Indeed, "Rule 26 merely requires the exp[e]rt report to contain a statement of the data or other information considered by the witness in forming the opinions.  The plain language of the Rule does not require the expert to attach the data or other information to the opinion."  Corwin v. Walt Disney Co., No. 602CV1377, 2004 WL 5486639, at *11 (M.D. Fla. Nov. 12, 2004) (denying motion to strike based on an alleged disclosure violation).

Further, the policies animating the Rule were not subverted.  Under Rule 26(a)(2)(B), "[i]t is justifiable to produce a summary of an expert's data which is detailed enough to provide the opposing party an opportunity to adequately cross examine the expert without providing all the raw data the expert looked at while coming to his opinion."  In re Nitro Leisure Prod., LLC, No. 02-14008-CIV, 2003 WL 25669322, at *1 (S.D. Fla. Dec. 16, 2003) (denying motion to exclude where party failed to disclose "completed questionnaires total[ing] 1953 pages" the expert relied upon in forming his opinion).  Sloan's Report provided sufficient detail, even if it omitted some information and calculations.

### 2.    *Plaintiffs have not shown Sloan acted in bad faith.*

The parties acknowledge Sloan produced some previously unproduced calculations and documents at his deposition.  Plaintiffs argue this late disclosure supports excluding Sloan from testifying at trial.  Doc. 60 at 8–9.  However, Plaintiffs have failed to present any evidence Sloan's production at the deposition was done in bad faith or with wrongful intent.  Thus, even if Sloan's Report was deficient based on this later production, excluding Sloan would be

inappropriate.  See Kleiman, 2020 WL 679362, at *8 (citing Etherton, 2011 WL 684592, at *3) ("Without a finding of bad faith or gamesmanship . . . courts are loathe to invoke the strong medicine of precluding expert testimony.").

Even with the late production of additional documents, Plaintiffs deposed Sloan without much issue.  Sloan's deposition transcript demonstrates Plaintiffs' counsel was able to conduct a thorough and lengthy deposition, covering the range of Sloan's opinions, without any indication that the late disclosure hamstrung counsel.  Doc. 60-2.  Similarly, Plaintiffs were able to file Daubert challenges to Sloan's Report and opinions and argue the merits of those positions at a hearing.  See Doc. 60, 88.

Thus, even if there were a discovery violation, striking the expert report or excluding Sloan as a witness would not be appropriate.  Chau v. NCL (Bahamas) Ltd., No. 16-21115-CIV, 2017 WL 3623562, at *5 (S.D. Fla. May 3, 2017) ("[E]xclusion of a witness is not automatic when a party fails to comply with the applicable disclosure rules . . . .  Rather, the court must first assess whether there was substantial justification for the failure to disclose or whether the failure to disclose was harmless.  In so doing, courts typically consider four factors: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice.").  Considering the factors described in Chau, the circumstances before the Court do not warrant the harsh sanction Plaintiffs seek.  See, e.g., Kleiman, 2020 WL 6729362, at *8; Torres v. First Transit, Inc., No. 17-CV-81162, 2018 WL 3729553, at *3 (S.D. Fla. Aug. 6, 2018) (denying motion to strike where there was no surprise to the non-disclosing party, the testimony at hand was crucial to the

party's claim, and "the potential prejudice to Plaintiffs of striking their experts far outweighs any prejudice to Defendant").

Further, in the cases Plaintiffs rely on, the expert was not excluded or if the expert was excluded, the deficiencies under Rule 26 were much more significant.  For example, in <u>Finch v. Owners Insurance Company</u>, CV 616-169, 2017 WL 6045449, at *3 (S.D. Ga. Dec. 6, 2017), the expert report was not produced until three days before the close of discovery, leaving no time for the opposing party to depose the expert, and still the Court denied the motion seeking to exclude the expert, opting instead to re-open discovery and allow the expert to be deposed at the expense of the offending party.  <u>Id.</u>  Here, Defendants' expert Report was produced in July 2020, Sloan was deposed on October 14, 2020, and discovery did not close until November 2, 2020. Docs. 55, 60-2.

Another case relied on by Plaintiffs, <u>Moore v. GNC, Holdings, Inc.</u>, Case No. 12-61703-CIV, 2014 WL 12684287, at *3 (S.D. Fla. Jan. 24, 2014), involved far more egregious Rule 26 violations.  There, the expert report lacked any facts or data underlying his opinion, a list of cases in which the expert had testified, or a statement of compensation.  <u>Id.</u>  The court found these deficiencies were never cured, which warranted exclusion.  <u>Id.</u>  In <u>City of Mount Park v. Lakeside at Ansley, LLC</u>, No. 1:05-CV-2775, 2008 WL 11334069, at *2 (N.D. Ga. Mar. 19, 2008), the court ordered monetary and other sanctions but did not exclude the expert due to a late disclosure.  Finally, some of the cases Plaintiffs rely on relate to untimely disclosure of opinions, which is distinct from the issues Plaintiffs raise here.  Plaintiffs do not argue they were unaware of Sloan's opinions altogether; rather, they contend they were unaware of the precisely how Sloan formed those opinions.  <u>See</u> Doc. 60 at 11 (citing <u>Hamlett v. Carroll Fulmer Logistics</u>

Corp., 176 F. Supp. 3d 1360 (S.D. Ga. 2016)); Doc. 81 at 3 (citing Cochran v. Brinkmann Corp., No. 1:08-CV-1790, 2009 WL 4823858, (N.D. Ga. Dec. 9, 2009)).

Plaintiffs have not shown they were unable to depose Sloan or have been irreparably prejudiced such that they cannot effectively cross-examine him or gauge how he formed his opinions. Kleiman, 2020 WL 679362, at *8 (first citing Bona Fide Conglomerate, Inc. v. SourceAmerica, No. 3:14-C-V00751, 2019 WL 1369007, at *19–20 (S.D. Cal. Mar. 26, 2019) (denying exclusion of expert under Rule 37 and rejecting argument party was prejudiced and could not meaningfully cross-examine an expert who did not disclose various notes and working papers); then quoting Patel v. Verde Valley Med. Ctr., No. CV051129, 2009 WL 5842048, at *1 (D. Ariz. Mar. 31, 2009) (declining to exclude an expert's testimony "merely because he discarded his notes" and stating defendants "are free to raise this issue as a means of attacking [the expert's] credibility with the jury if they so desire")). And there is no indication Sloan or Defendants acted in bad faith.

In sum, Plaintiffs have not shown Sloan's disclosure at the deposition was a violation of Rule 26. And, even if there were a discovery violation, striking the expert report or excluding Sloan as a witness would not be appropriate. Accordingly, the Court **DENIES** this portion Plaintiffs' Motion.

      **B.**    **Daubert Challenges to Sloan's Opinions**

Plaintiffs challenge four opinions contained in Sloan's Report under one or more of Daubert's prongs. Doc. 60. Specifically, Plaintiffs challenge Sloan's opinions on the following topics:

1.     The severity or magnitude of the impact in Collision #1, doc. 60 at 12–14;

2.     That Plaintiff J. Correll's driving decisions were the "primary" contributing factor to the series of collisions, id. at 14–17;

3.     The expected reaction times of Gonzalez and Defendant Carter and whether the wreck was avoidable, id. at 19–23; and

4.     The "successful" and "timely" navigation of the incident by Defendant Carter, id. at 17–19.

### 1.     Sloan may not testify on severity of the impact in Collision #1.

Plaintiffs challenge Sloan's opinion on the magnitude or severity of Collision #1.  The parties agree Collision #1 occurred when Gonzalez's tractor-trailer struck Plaintiffs' pick-up truck from behind.  Sloan's opinion is that Collision #1 was severe.  Sloan's opinion is based, at least in part, on Plaintiff J. Correll's testimony Collision #1 may have shattered the rear window of the pick-up truck and may have caused a head injury to a rear passenger.  Sloan suggests the relative speeds of the two vehicles involved in Collision #1 would have resulted in a "severe" collision.[4]  The implication of Sloan's opinion is that Collision #1 caused some, if not all, Plaintiffs' injuries or damages, prior to Collision #2.  Plaintiffs contend Sloan should not be allowed to offer an opinion about the severity or magnitude of the crash between Plaintiffs and Gonzalez (i.e., Collision #1).  Doc. 60 at 12; Doc. 81 at 7.  They assert Sloan's opinion on severity or magnitude or the "effect of the speed differentials at play" in Collision #1 is both unreliable and unhelpful to the jury.  Doc. 81 at 8.

Defendants contend Sloan's opinion about the severity of Collision #1 is based on his analysis of the speed differential between Plaintiff's pick-up truck and the Volvo tractor-trailer, which meets the Daubert standard for reliability.  Doc. 73 at 13–15.  Defendants argue because

---

[4]     Sloan's opinion on severity includes information on how fast the vehicles involved were traveling.  Doc. 73-2 at 5–6.  Sloan reached his conclusions on the speed differential in Collision #1 based on available evidence, including physical evidence and testimony.  Plaintiffs do not challenge Sloan's opinion on the relative speeds of each vehicle or the speed differential he determined between the vehicles.

Sloan can reliably testify as to the speed differential at play, his opinion regarding the accident severity as a result of those speed differentials is also admissible.  Doc. 73 at 13–14.

In assessing reliability, the Court should consider whether the opinion offered can or has been tested, whether it has been subjected to peer review and public, what its known or potential rate of error is, and whether it is generally accepted in the field.  United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005).  Here, Sloan admits he has not tested, and does not know, the speed differential it would take to shatter a rear window of a pick-up truck.  Doc. 60-2 at 71.  Similarly, Sloan testified there are no publications or peer reviewed studies establishing the severity of a crash needed to break a rear window or cause the head injury reported by a rear passenger.  Id. at 73.  Finally, Sloan admits the broken back window and head injury resulting from Collision #1 are the only evidence of the severity of the crash because it is impossible to isolate damage to Plaintiffs' vehicle caused by Collision #1 from damage caused by Collision #2.  Id. at 72.  Put another way, according to Sloan, it is not "scientifically possible" to separate damage from Collision #1 from the damage from Collision #2; instead, it is all "combined damage."  Id.  Thus, Defendants have not established Sloan's opinion that Collision #1 was severe is supported by any of the "general observations" articulated by the Brown court.  Similarly, Defendants offer no argument Sloan's observations are based on his experience as to make his opinion reliable under Daubert.

Additionally, Sloan's opinion on severity would be unhelpful to the jury.  Sloan based his opinion on the shattered rear window and reported head injury.  Doc. 73 at 14.  To the extent Sloan is testifying Collison #1 was "severe" simply because it caused a broken rear window and passenger injury, that is not an opinion beyond the understanding of the average lay person.  Frazier, 387 F.3d at 1262.  This is an ordinary qualitative observation any lay person could make.

Furthermore, Sloan's opinion on this topic "offers nothing more than what lawyers for the parties can argue in closing arguments." Jackson, 2019 WL 2098991, at *10 (quoting Cook, 402 F.3d at 1111).

Accordingly, Defendants have failed to meet their burden of demonstrating Sloan's opinion on the severity of Collision #1 would assist the trier of fact, and this portion Plaintiffs' Motion is **GRANTED**.  Sloan is prohibited from offering testimony as the severity of Collision #1, the collision between Plaintiffs and Gonzalez.  This ruling does not limit Sloan's ability to testify as to the speed differentials between Plaintiffs and Gonzalez.

> ### 2.    *Sloan may not testify Plaintiff J. Correll was the "primary contributor" to the wreck.*

Sloan opines Plaintiff J. Correll's driving decisions, and specifically, her decision to resume driving after pulling into the emergency lane due to mechanical issues, leads to the conclusion she was the "primary" contributor to the collisions. Doc. 73-2 at 7–8.  Sloan describes Plaintiff J. Correll's decision to resume driving on I-95 as being the primary contributor to the series of collisions.  He further opines Plaintiff J. Correll could have safely driven in the emergency lane and exited I-95, which, in his opinion, created a danger situation. Id.

Plaintiffs seek to exclude Sloan's opinion the "primary contributing factor to the series of collisions was Plaintiff J. Correll's operation of her [Dodge pick-up truck]." Doc. 60 at 14–15. They seek to limit the characterization of Sloan's testimony and prohibit Sloan from testifying on relative or comparative fault.  Doc. 81 at 9–11.  Plaintiffs argue this opinion impermissibly invades the province of the jury and is within the ken of ordinary jurors, and, therefore, is not admissible under Rule 702 and Daubert.  Id. at 16.  Defendants argue, even though Sloan's

opinion on contributing factors embraces an ultimate issue, it is still admissible under the Federal Rules of Evidence because Sloan provides an adequate basis for the opinion.  Doc. 73 at 15–17.

Sloan's opinion on whether Plaintiff J. Correll was the "primary" contributor the incident should be excluded because this opinion offers "nothing more than what lawyers for the parties can argue."  Cook, 402 F.3d at 1111.  While expert opinions embracing the ultimate issue for the fact finder's determination are not *per se* inadmissible under Rule 704, they may be excluded if not "otherwise admissible," i.e., if they are not helpful to the fact finder under Rules 701 or 702 or if they waste time or confuse the jury as contemplated under Rule 403.  See United States v. Milton, 555 F.2d 1198, 1203–04 (5th Cir. 1977) (explaining, although testimony embracing ultimate legal issues is not barred by Rule 704, courts still have discretion to exclude an expert's bare legal conclusions so they do not usurp the role of the court in instructing on the applicable law); Frazier, 387 F.3d at 1262–63 (explaining experts help the fact finder by addressing matters beyond the ken of the average lay juror, bare legal conclusions do not effectuate this purpose, and testimony on the ultimate issues may be excluded under Rule 403 because it risks juror's assigning it too much weight); see also Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990) (reversing the district court for failure to exclude expert's legal conclusion from testimony).

Defendants argue Sloan's opinion is related to the reasonableness of Plaintiffs' conduct considering the standard of care and is, thus, helpful, citing O'Brien v. NCL (Bahamas) Ltd., Case No. 16-23284, 2017 WL 10410455 (S.D. Fla. Oct. 13, 2017), for support.  In O'Brien, the district court discussed Richman v. Sheahan, 415 F. Supp. 2d 929, 946 (N.D. Ill. 2006), explaining in that case, expert testimony about the reasonableness of the conduct at issue would be helpful because the expert reports made clear the opinions were not "bare conclusions without

explanation." <u>O'Brien</u>, 2017 WL 10410455, at *8 (discussing <u>Richman</u>, 415 F. Supp. 2d. at 948–49).  The <u>O'Brien</u> court concluded the expert testimony as to the reasonableness of the defendant's conduct would be permitted because the expert adequately explained his opinion. <u>Id.</u> at *9.  Defendants contend Sloan's Report adequately explores the criteria used to form his opinion that Plaintiff J. Correll was primarily at fault, including Plaintiff J. Correll's driving decisions, as well as the actions taken by the other drivers.  Doc. 73 at 16.  Absent from Sloan's Report, however, is any opinion on the standard of care, the basis for such an opinion, or how Sloan applied the facts to such a standard.  Unlike in <u>O'Brien</u> and <u>Richman</u>, there is no indication Sloan' s testimony is based on a comparison of Plaintiff's conduct with the appropriate standard of care.

To the extent Sloan seeks to testify as to who is primarily at fault for the accident or who or what the primary contributor is to the incident, such statements are inadmissible and, thus, excluded.  <u>See</u> <u>Key v. Celadon Trucking Srvs., Inc.</u>, CV 108-165, 2010 WL 11431270, at *4–5 (S.D. Ga. Feb. 9, 2010) (excluding expert testimony as to whether a motorcyclist's actions were contributory negligent); <u>Id.</u> (citing <u>Davis v. Cowan Sys., LLC</u>, No. 1:03-CV-2358, 2005 WL 2338829 (N.D. Ohio Sept. 23, 2005) (excluding legal conclusions of proffered expert in trucking negligence case under Rules 701, 702 and 403)).

Accordingly, the Court **GRANTS** this portion of Plaintiffs' Motion.  Sloan may not testify Plaintiff J. Correll was the primary contributor to the accident.  This ruling does not prohibit Sloan from testifying generally about the driving decisions made by Plaintiff J. Correll.

### 3. *Sloan may not testify about expected reaction times related to Collision #2.*

Plaintiffs seek to exclude Sloan's opinions regarding expected reaction times and whether Collision #2 between Plaintiffs and Defendant Carter was avoidable.[5]  Doc. 60 at 19.  Sloan formed these opinions using a "studies-based analytical tool" (i.e., software) called IDRR.  Id.  Sloan relied on the results produced by IDRR to form his opinions on how much space was needed for Defendant Carter to stop and avoid hitting Plaintiffs, Defendant Carter's reaction times, and, ultimately, that Defendant Carter could not have avoided Collision #2.  Doc. 73-2 at 9.  Plaintiffs seek to exclude testimony by Sloan on the results provided by the IDRR software because Sloan cannot explain how the software produces its results and he did not independently validate the accuracy of the results from IDRR.  Doc. 60 at 22–23; Doc. 81 at 13–14.

Defendants contend, however, Sloan's opinions formed using IDRR should be admitted because Sloan's citations to papers authored by IDRR's developer provide an independent source confirming the reliability of the software.  Doc. 81 at 19.  Further, Defendants state Sloan independently validated the results of the IDRR calculations by performing the same calculations by hand and citing to studies to support the reliability of the calculations he performed.  Id. at 20.

Sloan admitted he did not calculate the expected reaction times by hand but relied on the output from IDRR.  Doc. 60-2 at 210–11.  Sloan explained the author of the IDRR software, Jeffrey Muttart, designed the equation that calculates reaction time.  Id. at 212.  According to Sloan, Muttart combined the study variables, which Sloan previously described, to develop an equation that provides expected reaction times.  Id.  However, Sloan does not explain how this

---

[5]      The portion challenged by Plaintiffs was provided to the Court as Exhibit 4.  Plaintiffs argue Sloan should be prohibited from testifying on the information contained in the lower left-hand box, titled "Expected Pre-Impact Maneuver," parts of which are incorporated into Sloan's Report.  See Doc. 60-4 at 2; Doc. 73-2 at 8–9.

equation developed by Muttart works and failed to identify the variables in Muttart's equation. Id. at 210–214.

Defendants maintain Sloan's use of IDRR to determine expected reaction times and his explanation of the program are adequate to establish his methodology was reliable.  Defendants cite to Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380, 394 (8th Cir. 2016), where the Eighth Circuit Court of Appeals held the district court did not abuse its discretion when permitting an expert to testify on perception-reaction time analysis based on IDRR.  In Kozlov, the Eighth Circuit determined IDRR was commonly relied on in the field of accident-reconstruction and the expert explained the scientific theory behind the program.  Id.

In this case, Defendants have not established IDRR is commonly relied upon by accident reconstructionist and Sloan has not explained the scientific theory behind the software, thus distinguishing this case from Kozlov.  Further, Sloan failed to explain the scientific program behind IDRR, unlike the expert in Kozlov.  Though Sloan states the equation is based on Muttart's "meta-analysis" of different studies, he does not provide any more details on how Muttart's equation operates.  Sloan does not explain how Muttart developed the equation, how the equation is applied to the data he selected for input, or identify the variables in Muttart's equation.  Instead, Sloan points to un-attached studies, which he states explain Muttart's equation.  Doc. 60-2 at 213.  Merely pointing to studies not in the record is insufficient to establish that Sloan's methodology is sound.  Because Defendants did not establish IDRR was commonly relied on in the field of accident-reconstruction and Sloan did not explain the scientific theory behind it, Defendants' reliance on Kozlov is unpersuasive.

Similarly unavailing is Defendants' reliance on Cantu v. United States, No. CV 14-00219, 2015 WL 4720580 (C.D. Cal. Aug. 7, 2015).  In Cantu, the court heard expert testimony

based on IDRR results the expert independently validated.  Id. at 9.  However, Cantu was a bench trial and the court was not determining whether the expert should be permitted to testify under Daubert but was merely evaluating the persuasiveness of opposing experts' testimony.  Given the procedural posture of Cantu, it is not persuasive on the issue.  Further, even assuming Cantu does stand for the proposition that when an expert independently validates the results of the IDRR software the opinion is reliable, Defendants have not established Sloan independently validated the IDRR results.  In his deposition, Sloan admitted he did not validate the specific calculations at issue—the expected reaction times calculations—himself.  Doc. 60-2 at 210–11.  While Sloan appears to state he did some calculations by hand, it is unclear to which calculations he is referring.  See id. at 162, 210–11.  Furthermore, Defendants have not explained which of these calculations were done by hand or even addressed Sloan's deposition testimony indicating he did not independently validate the IDRR output at issue.

Because Sloan failed to explain how IDRR determined reaction times and Defendants have not established he performed the calculations himself, his testimony on expected reaction times should be excluded.  Sloan's method suffers from the impermissible "black box" syndrome, where "data is fed at one end and . . . an answer emerges at the other, and the jury cannot see how the pieces fit together or how the data drives the conclusion."  Lee-Bolton v. Koppers Inc., 319 F.R.D. 346, 377–78 (N.D. Ga. 2017) (quoting Open Text S.A. v. Box, Inc., Case No. 13-cv-04910, 2015 WL 349197, at *6 (N.D. Ca. Jan. 23, 2015)); see also United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005) (affirming the district court's finding an expert's reliance on a computer program's results was unreliable because the expert did know how the program arrived at its results and, thus, relied "on the results of a program without knowing how it works"); Ferraiuolo v. Allstate Ins. Co., No. 1:11-cv-522, 2012 WL 12884443, at *7–8 (N.D.

Ga. Sept. 25, 2012) (excluding an expert witness from testifying when his methodology consisted of inputting data into a spreadsheet that contained a pre-inputted formula).  Without either showing his calculations of the expected reaction times or explaining specifically how IDRR determines reaction times based on the equations it employs, Sloan's analysis on the avoidability of Collision #2 is incomplete and unreliable.  Hendrix v. Evenflo Co., Inc., 255 F.R.D. 568, 578 (N.D. Fla. Jan. 28, 2009) ("[T]he court must undertake an independent analysis of each step in the logic leading to the expert's conclusions; if the analysis is deemed unreliable at any step the expert's entire opinion must be excluded.").

Accordingly, the Court **GRANTS** this portion Plaintiffs' Motion; Sloan is prohibited from testifying as to Defendant Carter's expected reaction times and whether Collision #2 was avoidable.

### 4. *Sloan may not testify Defendant Carter's navigation of other vehicles was "timely" or "successful."*

Sloan opines Defendant Carter "timely" and "successfully" navigated the two situations—Gonzalez's Volvo tractor-trailer braking and pulling off the road and Plaintiffs' pick-up truck stopped in the middle of the road—he faced.  Doc. 73-2 at 8–9.  Sloan states Defendant Carter reacted timely and successfully to the Volvo tractor-trailer, which braked and moved to the emergency lane by changing lines.  Id.  The implication of this opinion is Defendant Carter was not negligent or reacted appropriately to the first potential hazard.  Additionally, Sloan opines Defendant Carter timely applied his brakes after he changed lanes and saw Plaintiffs' pick-up truck, even though he ultimately collided with Plaintiffs' pick-up truck.  Id. at 9.  The implication of this second timeliness opinion is that Defendant Carter was not negligent in reacting to Plaintiffs' disabled vehicle.

Plaintiffs seek to exclude Sloan's characterization of Defendant Carter's reaction to Gonzalez pulling off the road and into the emergency lane and Carter's reaction to Plaintiffs being stopped in the center lane as "timely" and "successful."  Doc. 60 at 17; Doc. 81 at 11–12.  Sloan opines Defendant Carter's decision to move to the center lane when Gonzalez pulled into the emergency lane was a timely and successful reaction.  Doc. 73-2 at 8.  Sloan also states Defendant Carter reacted in a timely manner to the situation he encountered after he changed lanes—Plaintiffs' pick-up truck stopped in the middle lane.  Id. at 8–9.  Plaintiffs argue Sloan's opinion on timeliness and whether he reacted successfully is not reliable or helpful under Daubert.  Doc. 60 at 17.  Plaintiffs do not seek to prohibit Sloan from testifying that Defendant Carter did, in fact, avoid a collision with Gonzalez but ask the Court to prohibit Sloan from characterizing Defendant Carter's actions in either instance as "timely" or "successful."

Defendants argue there is nothing wrong with Sloan's characterization of Carter's actions as "timely" or "successful" because Sloan is simply explaining Carter avoided colliding with Gonzalez.  Additionally, Defendants argue the opinion is accurate based on Sloan's "studies-based analysis" standard in the field of accident reconstruction.  Doc. 73 at 17–18.

**Sloan's Opinion on Timeliness for Collision #1**.  Neither Sloan nor Defendants offer an objective basis for Sloan's opinion Defendant Carter's reaction (i.e., moving to the center lane) to Gonzalez slowing down and pulling off the road was timely.  For that opinion, Sloan appears to simply conclude Defendant Carter responded timely to Collision #1 because he did not hit Gonzalez, without further elaboration.  Doc. 73-2 at 8.  Sloan offers no numerical measurements or reasoning to support this opinion.  While numerical measurements and replicable tests are not necessarily required for non-scientific experience-based testimony, an expert must provide more than mere *ipse dixit* in support of his opinion.  Frazier, 387 F.3d at 1261–62.  In fact, in Sloan's

deposition, he admits he does not know how long it took Defendant Carter to react to Gonzalez. Doc. 60-2 at 110.  Nevertheless, Sloan concludes any reaction was "timely" without providing a meaningful basis for that opinion in his Report or his deposition.  Thus, Sloan's opinion Defendant Carter timely navigated Collision #1 and the situation posed by Gonzalez braking and pulling off into the emergency lane is not reliable.

Accordingly, the Court **GRANTS** this portion of Plaintiff's Motion.  Sloan is prohibited from characterizing Defendant Carter's reaction to Gonzalez's decision to pull over as "timely."

**Sloan's Opinion on Successfulness for Collision #1**.  Sloan's opinion that Defendant Carter successfully navigated around Gonzalez's vehicle is not proper expert testimony.  When discussing this opinion, Sloan acknowledges he did not consider how Defendant Carter was trained to deal with the situation Gonzalez presented when opining Defendant Carter responded "successfully." Doc. 60-2 at 134.  Instead, Sloan states his description of "successful" was simply based on the fact Defendant Carter did not collide with Gonzalez. Id. at 135.  Moreover, Sloan admits his observation Defendant Carter did not collide with Gonzalez and was thereby successful requires no expert testimony. Id.

Sloan again fails to establish any methodology linking his conclusion Defendant Carter "successfully" navigated Gonzalez's vehicle.  To the extent Sloan's opinion Defendant Carter successfully navigated the situation posed by Gonzalez's vehicle is meant to convey Defendant Carter acted in some non-negligent manner, the opinion is not reliable.  To the extent Sloan's "successful" characterization simply means Defendant Carter did not hit Gonzalez's vehicle, the statement is a commonplace observation Defendant Carter and Gonzalez did not collide and is not based on Sloan's experience as an accident reconstructionist or any reliable methodology.

Furthermore, such a characterization could improperly suggest an opinion on the propriety of Defendant Carter's actions.

Thus, the Court **GRANTS** this portion of Plaintiffs" Motion.  Sloan is prohibited from describing Defendant Carter's decision to move to the center lane after seeing Gonzalez pulling off the road as "successful."

**Sloan's Opinion on Timeliness for Collision #2**.  Sloan also seeks to opine Defendant Cater timely reacted by quickly braking after he saw Plaintiffs' pick-up truck stopped in the center lane.  Plaintiffs contends this opinion should be excluded because Sloan has provided no objective basis as to timeliness.  Doc. 81 at 11.  In his Report, Sloan provides an objective basis for his conclusion Defendant Carter reacted in a timely manner to Plaintiffs' pick-up truck.  Doc. 73-2 at 9.  However, this objective basis relies on the IDRR results, which Sloan is prohibited from testifying on for the above set forth reasons.  Because Sloan has provided no basis or methodology other than the IDRR results, his opinion on whether Defendant Carter timely reacted to Plaintiffs' pick-up truck stopped in the center lane is also excluded.

Accordingly, the Court **GRANTS** Plaintiffs' Motion seeking to exclude Sloan's opinion that Defendant Carter timely navigated Plaintiffs' pick-up truck on this basis.  Sloan is not permitted to characterize Defendant Carter's reaction immediately prior to Collision #2 as timely.

## II.   Defendants' Challenges to Thomas Cauthen

Defendants challenge Plaintiffs' expert Thomas W. Cauthen, Jr.  Doc. 62-1.  Defendants argue Cauthen is not qualified to offer opinions concerning the Federal Motor Carrier Safety Regulations ("FMCSR") and matters concerning hiring, retention, and training of commercial drivers.  Id. at 6.  Additionally, Defendants contend Cauthen's methodology is not sufficiently

reliable.  Id. at 9.  Finally, Defendants argue Cauthen's opinions are not helpful and likely to confuse or mislead the jury.  Id. at 13, 16.

**A.    Cauthen is Qualified to Testify on Hiring and Retention in the Commercial Trucking Industry**

Defendants argue Cauthen is not qualified to offer any opinion on whether Defendant U.S. Xpress' hiring and retention of Defendant Carter was outside the industry standards regarding the hiring of safe or responsible drivers.  Doc. 62-1 at 6–8.  Specifically, Defendants maintain Cauthen is not qualified because he lacks experience with a company the size of U.S. Xpress, his experience in recruiting and hiring is too limited to qualify him as an expert on hiring and retention standards in the trucking industry generally, and because he lacks experience with hiring newly licensed truck drivers who attended a "finishing school."  Doc. 62-1 at 6–7. Plaintiffs oppose Defendants' Motion, arguing Cauthen's experience in the commercial trucking industry makes him at least minimally qualified to offer his opinions.  Doc. 72 at 8.

An expert must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  Not only must a witness have expertise, but the subject matter of the witness's testimony must be sufficiently within that expertise.  Maiz, 253 F.3d at 665.  However, an expert need not have experience precisely mirroring the case at bar.  Id.  Courts generally do not impose a rigorous qualifications requirement but instead look to whether a proposed expert has minimal qualifications in the area in which they seek to testify.  See, e.g., Hendrix, 255 F.R.D. at 584–85 (finding an expert qualified to testify regarding the shattering of a child restraint system even when he had not "designed or molded a CRS"); Cason v. C.R. Bard, Inc., Case No. 1:12-cv-1288, 2015 WL 9913809, at *10 (N.D. Ga. Feb. 9, 2015) (finding an expert qualified to testify regarding the design and testing of medical devices even when he had not worked with the blood clot filter at issue in the case).

Cauthen is qualified to testify regarding FMSCR regulations and standards relating to the hiring and retention of commercial drivers.  According to Cauthen's curriculum vitae, he has 32 years of experience in the commercial motor vehicle field.  Doc. 62-2 at 4.  His experience in this field includes 20 years as the Director of Safety and Compliance for B-H Transfer Company, where he was responsible for the company's safety protocols and compliance with both federal and state rules and regulations.  Id. at 5.  Cauthen served as a Sergeant for the Georgia Public Service Commission, where he enforced federal and state motor carrier rules and regulations.  Id. at 6.  Along with assisting in hiring drivers at B-H Transfer, doc. 72-1 at 20, Cauthen gained broader exposure to industry standards by attending conferences where the hiring and retention of drivers was discussed, as well as through conversations with other professionals on these specific issues, doc. 72-2 at 2–3.  Although Cauthen has not worked at a company similar in size to Defendant U.S. Xpress or with the exact same hiring practices, his experience qualifies him to opine on industry standards regarding the hiring and retention of drivers.  Defendants have identified gaps in his qualifications but not to the extent to preclude admission of his testimony.  Hendrix, 255 F.R.D. at 578; Finch v. Owners Ins. Co., CV 616-169, 2019 WL 430931, at *3 (S.D. Ga. Feb. 4, 2019).

Accordingly, Cauthen is qualified to offer expert testimony on hiring and retention in the commercial trucking industry.

### B.    Cauthen's Opinions are Sufficiently Reliable

Next, Defendants argue Cauthen's testimony should be excluded because he employed unreliable methodology and he failed to apply all relevant facts in issue.  Doc. 62 at 9.  Defendants challenge two opinions offered by Cauthen under Daubert's reliability prong.  First, Defendants argue Cauthen should be prohibited from offering testimony Defendant U.S. Xpress' hiring of Defendant Carter violated industry standards for driver hiring and retention.  Id.

Second, Defendants assert Cauthen should not be permitted to offer the opinion Defendant Carter took unsafe actions violating safety driving standards and causing the collision.  Id.

      *1.*    ***Cauthen's opinion on driver hiring and retention standards is reliable.***

Defendants contend Cauthen's opinion on driver hiring and retention standards should be excluded because Cauthen relies on his own experience to form his opinion, which is insufficient to establish reliability.  Id. at 9–10.  Plaintiffs argue Cauthen's experience and application of relevant driving standards is a valid and reliable basis for his opinions on hiring and retention of drivers.  Doc. 72 at 8–9.

The basis for Cauthen's hiring and retention opinions is his experience in the commercial trucking industry.  When an expert opinion is based on experience, a court may decide such testimony is reliable based upon that expert's personal knowledge or experience.  Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1338 (11th Cir. 2009); see also Kumho, 526 U.S. at 151.  For the opinion to be deemed reliable under this rubric, Cauthen must "explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts."  Frazier, 387 F.3d at 1261 (citation omitted).  In other words, Cauthen must be able to demonstrate a sufficient connection between his experience and the opinion he offers.  Cauthen does so here.

Cauthen explains he spent 20 years as the Director of Safety and Compliance for a trucking company and is familiar with industry standards regarding the hiring and retention of commercial truck drivers.  Doc. 62-2 at 2.  Based on this experience, he explains he would have never hired Defendant Carter because of his driving history and, moreover, Defendant U.S. Xpress' hiring of Defendant Carter was outside industry standards.  Id.  Further, Defendant U.S.

Xpress violated industry standards by not terminating Defendant Carter due to additional traffic violations and falsification of duty status records.  Id. at 2–3.

Cauthen also expounds on the basis for his opinions in his deposition, citing to Defendant Carter's moving violations, including a reckless driving violation, and speeding violation. Doc. 72-1 at 32–33.  Cauthen explains, based on these violations and an accident Defendant Carter was involved in, it is his opinion Defendant U.S. Xpress' hiring of Defendant Carter fell outside industry standards.  Id. at 36.  Cauthen then clarifies his opinion is based on his experience hiring drivers in the industry and knowledge of best practices, which he described earlier in his deposition.  Id. at 16–23.  Cauthen also addresses his opinion Defendant U.S. Xpress should have terminated Defendant Carter due to a speeding citation Defendant Carter received after he was employed and his falsification of duty status records while he was employed.  Id. at 42, 56.  He explains industry standards, as informed by his experience, would warrant termination of Defendant Carter for receiving a citation for speeding in a work zone.  Id. at 43.

As for the falsification of duty status records, Cauthen explains Defendant Carter represented in his written logs he was resting in the sleeper berth of the truck when he was in fact driving according to the trucks electronic log.  Id. at 56–57.  According to Cauthen, industry standards dictate terminating Defendant Carter based on this falsification, which Defendant U.S. Xpress did not do.  Id.

In his Report, deposition testimony, and affidavit, Cauthen explains his experience in the trucking industry as it relates to hiring and retention of drivers, the basis for his knowledge on the topic, and that he thinks Defendant U.S. Xpress' hiring and retention of Defendant Carter violated those standards.  Because Cauthen explains all this, his opinion on Defendant Carter's

hiring and retention is sufficiently reliable. <u>Claussen v. PowerSecure, Inc.</u>, No. 3:18-cv-00607, 2019 WL 4941109, at *9 (M.D. Ala. Oct. 7, 2019) (admitting an expert testimony on trucking industry standards and whether defendant violated those standards when the expert's opinion was based on his experience in the industry, seminars, and discussions with industry professionals). While Defendants may challenge Cauthen's ultimate conclusions on these topics, the challenges are more properly the subject of cross-examination and not exclusion under Rule 702.

### 2. *Cauthen's opinion on safe driving standards is reliable.*

Defendants argue Cauthen's opinion Defendant Carter violated safe-driving standards and caused the collision is not reliable. Doc. 62 at 11. Defendants contend Cauthen's opinion is based on an incomplete analysis and incomplete facts and, thus, must be excluded. <u>Id.</u> Defendants assert Cauthen did not properly account for the actions of the other truck driver, Gonzalez, and Plaintiff J. Correll, making his opinion unreliable. <u>Id.</u> at 12–13. Further, they argue Cauthen's assessment of Defendant Carter's driving decisions is based on speculation. <u>Id.</u> at 11–12.

Defendants' argument that Cauthen's opinion on safe driving is unreliable because he did not properly account for all the variables Defendant Carter faced fails. While Defendants take issue with Cauthen's purported assumption Defendant Carter perceived Gonzalez pulling into the emergency lane as a "hazard," arguments related to an expert's failure to consider certain factors or variables typically goes to weight rather than admissibility. <u>Vincent v. Am. Honda Motor Co.</u>, No. CV 108-067, 2010 WL 11537726 (S.D. Ga. July 1, 2010) (citing <u>Bazemore v. Friday</u>, 478 U.S. 385, 400 (1986)). "[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination." <u>McGarity v. FM Carriers Inc.</u>, No. CV410-130, 2012

WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) (citing <u>Daubert</u>, 509 U.S. at 596; <u>Quiet Tech.</u>, 326 F.3d at 1345–46).

Moreover, the assumptions Cauthen relied on to determine Defendant Carter perceived the braking Volvo tractor-trailer driven by Gonzalez as a hazard have at least some basis in the record.  Defendant Carter admitted in his deposition Gonzalez probably applied the brakes when moving into the emergency lane.  Doc. 82-1 at 20.  He also testified a braking tractor-trailer would constitute a hazard.  <u>Id.</u> at 12.  Finally, Defendant Carter admitted the first thing he should do when he sees a hazard is apply his brakes.  <u>Id.</u> at 14.  Thus, Cauthen's opinion that the scenario Defendant Carter encountered required braking is not based on assumptions so far afield as to render the opinion unreliable.  <u>See</u> <u>Tillman v. C.R. Bard, Inc.</u>, 96 F. Supp. 3d 1307, 1320 n.14 (M.D. Fla. 2015) (declining to exclude expert opinion based on assumption for which expert offered some support).  Defendants are free to identify flawed data or facts relied upon by Cauthen through cross-examination, but such reliance on such assumptions does not render expert testimony inadmissible under <u>Daubert</u>.  <u>McGarity</u>, 2012 WL 1028593, at *8.

Defendants also challenge Cauthen's opinion as unreliable, arguing Cauthen does not connect his experience to his opinion Defendant Carter failed to brake when seeing Gonzalez pull into the emergency lane.  However, this argument by Defendants is also unpersuasive.  In his Report, Cauthen criticizes Defendant Carter's failure to brake, explaining when a driver perceives a hazard, his first reaction should always be to brake.  Doc. 62-2 at 2.  Cauthen explains braking would be consistent with the CDL Manual, U.S. Xpress' Driver's Manual, and "every other commercial driver's manual [he has] reviewed."  <u>Id.</u>  Cauthen also opined Defendant Carter's decision to travel at maximum speed and full throttle ignored safe-driving principles requiring commercial drivers to "see ahead a safe distance" and to ensure "safe

standards of total stopping distances" were met.  Id.  Cauthen based this part of his opinion on his experience in the trucking industry, including as a driving instructor.

Further, he connects both his knowledge of the CDL Manual and others, as well as his experience, to his opinion.  A qualified expert may use CDL Manuals as a basis for an opinion regarding the standard of care.  See, e.g., Ricker v. Southwind Trucking, Inc., No. 4:05-CV-0223, 2006 WL 5157692, at *6–8 (N.D. Ga. July 13, 2006) (prohibiting an expert from testifying about what federal regulations provide and mean, but permitting expert to offer testimony regarding standard of care applicable in trucking accident case based in part on standards established by the Model CDL Manual).  Here, Cauthen does just that when he states Defendant Carter should have braked based on the CDL Manual and others.  Doc. 62-2.  Additionally, Cauthen explains in his deposition why he believes braking would have been safer than changing lanes for Defendant Carter based on his experience in the trucking industry, including as a safe driving instructor.  Doc. 72-1 at 79–80.

Accordingly, Cauthen's opinions are sufficiently reliable and should not be excluded on this ground.

### C.    Cauthen's Opinions Assist the Trier of Fact

Defendants argue Cauthen's opinions on industry standards are not helpful to the jury because they are not beyond the understanding of the average citizen.  Doc. 62-1 at 14. Defendants contend Cauthen's opinion is based on nothing more than reading the FMCSRs and CDL Manuals, and no specialized or knowledge is required to understand them.  Id.  Plaintiffs dispute Defendants' characterization of Cauthen's opinion, arguing understanding of the training received by commercial truck drivers, CDL Manuals, and other safe driving standards for commercial truck drivers is beyond the knowledge of an average juror.  Doc. 72 at 14.

Cauthen's Report is sufficiently helpful because the operation and safe driving standards of commercial trucks is likely beyond the understanding of a lay person. <u>Jackson</u>, 2019 WL 2098991, at *10 (citing <u>Frazier</u>, 387 F.3d at 1262) (permitting expert testimony when the testimony is explaining something "beyond the understanding of the average lay person").  An average juror may be able to read the FMCSRs and CDL manual, but he would not likely be able to apply those sources to a specific factual situation and understand how the provisions relate to a standard of care in the relevant industry.  <u>See Lohr v. Zehner</u>, Civil Action No. 2:12cv533, 2014 WL 2832192, at *3 (M.D. Ala. June 23, 2014) (explaining an expert's testimony on how to drive a truck safely and permitting trucking safety expert to opine regarding FMCSRs, to the extent Alabama law permits a jury to consider those regulations in determining whether a defendant exercised appropriate care for a situation); <u>Botey v. Green</u>, 3:12-cv-1520, 2017 WL 2485231, at *3 (M.D. Pa. June 9, 2017) (holding an expert's testimony on CDL Manuals would be helpful to a jury).  Accordingly, Cauthen's opinion will not be excluded as unhelpful.

**D.    Cauthen's Opinions are not Likely to Confuse or Mislead the Jury**

Defendants argue Cauthen's testimony as an expert, "coupled with the implementation of technical jargon," is likely to mislead the jury.  Doc. 62-1 at 16.  Plaintiffs oppose Defendants' Motion, asserting Cauthen's testimony on safe driving standards will help provide the jury with a framework with which to analyze the facts at issue.  Doc. 72 at 15.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.  Because courts believe jurors may place "talismanic" significance on expert testimony, Rule 403 is especially important when an expert proposes to testify.  <u>See Frazier</u>, 387

F.3d at 1263.  "[S]ometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403."  Id.

Defendants argue Cauthen's opinions are likely to confuse or mislead the jury because they are not reliable, a contention the Court has already addressed and denied.  Doc. 62 at 17. Further, Cauthen's testimony is clearly relevant to the issue at hand and whether Defendant Carter is liable for Collision #2.  As explained above, Cauthen's testimony on industry standards for safe driving has the potential to provide jurors with a useful framework in answering that liability question.  Defendants have not articulated how they would be prejudiced by Cauthen's testimony on these industry standards, other than the admissibility issue which has already been addressed.

Accordingly, the Court **DENIES** Defendants' request seeking to exclude Cauthen's opinion on whether Defendant U.S. Xpress' hiring and retention violated industry standards and whether Defendant Carter acted safely, based on industry standards, by failing to brake and instead choosing to change lanes.

## III.   Defendants' Challenges to Sean Alexander

Defendants challenge Plaintiffs' expert Sean Alexander.  Doc. 63.  The parties disagree on whether Alexander should be permitted to testify regarding the driving decisions Defendant Carter made and the potential outcome if he made other decisions.  Defendants contend Alexander's "avoidance opinions" are not admissible under Daubert.[6]  Id.

---

[6]   Defendants do not, at this time, challenge whether Alexander is qualified to testify as an accident reconstruction expert.  Doc. 63-1 at 4.  Therefore, the Court will not address Alexander's qualifications and takes no position on the matter.

A.      **Alexander's Opinions are Sufficiently Reliable**

Defendants argue Alexander's opinions are unreliable under <u>Daubert</u>.  Doc. 63-1 at 7.

Specifically, they argue Alexander's opinion Collision #2 could have been avoided if Defendant

Carter did not change lanes fails to analyze Plaintiff J. Correll's avoidance opportunities.  <u>Id.</u> at

7–8.

In other words, Defendants take issue with the facts and assumptions Alexander relied on

when forming his opinion.  Defendants made nearly identical challenges to Cauthen.  Like with

Cauthen, the assumptions Alexander relies upon have a sufficient basis in the record and do not

render his opinion unreliable.  <u>McGarity</u>, 2012 WL 1028593 at *8.  When Alexander was asked

about Plaintiff J. Correll's ability to avoid the wreck and her decision-making, he answered the

questions directly.  Doc. 71-1 at 88.  In fact, Alexander admitted if Plaintiff J. Correll had not

decided to re-enter the highway, the collisions would not have occurred.  <u>Id.</u> at 89.  Though

Alexander did not include this analysis in his Report, he explains he did not do so because he did

not think expert analysis was required to reach those conclusions.  <u>Id.</u> at 90.  Further, Alexander

does not conclude Defendant Carter's actions are the sole or even primary cause for his collision

with Plaintiffs.  Rather, he seeks to explain what happened, what could have happened if

Defendant Carter had made different driving decisions, and what other options may have been

available to Defendant Carter.  <u>Id.</u> at 124–25.

Just like Defendants' challenges to Cauthen, Alexander's decisions of what factors to

analyze and assumptions to rely on are grounds for cross-examination and do not warrant

exclusion.  <u>Vincent</u>, 2010 WL 11537726 (S.D. Ga. July 1, 2010).  "[T]he identification of flawed

data or facts relied upon by an expert is precisely the role of cross-examination."  <u>McGarity</u>,

2012 WL 1028593, at *7 (citing <u>Daubert</u>, 509 U.S. at 596; <u>Quiet Tech.</u>, 326 F.3d at 1345–46).

Indeed, "in most cases, objections to the inadequacies of a study are more appropriately

considered an objection going to the weight of the evidence rather than its admissibility."

Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) (quoting Hemmings v.

Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002)); see also Purdee v. Pilot Travel Centers,

LLC, No. CV407-028, 2010 WL 11537772, at *3 (S.D. Ga. Jan. 14, 2010) (citing Bazemore, 478

U.S at 400).

Defendants' arguments on whether Alexander properly analyzed all the factors leading to

Collision #2 concern the weight, credibility, or relevance of his opinion, not its admissibility.

**B.    Alexander's Opinion on Avoidance Opportunities Would not Assist the Trier of Fact**

Defendants also challenge Alexander's "avoidance opportunity" opinions on the grounds

they would not assist the trier of facts.  Doc. 73-1 at 10.  Alexander opined on other decisions

Defendant Carter could have made to avoid Collision #2.  The implication of this opinion is that

Defendant Carter should have taken these other options, making him liable for hitting Plaintiffs.

Defendants argue Alexander's opinion regarding Defendant Carter's avoidance opportunities

goes to the legal implications of Defendant Carter's conduct and constitutes inadmissible

testimony.  Id. at 11.  Defendants argue expert testimony is not necessary for the average lay

person to understand if Defendant Carter had not changed lanes, his collision with Plaintiffs

would likely have not occurred.[7]  Doc. 82 at 7.

Alexander's testimony the accident would not have occurred if Defendant Carter did not

change lanes is not beyond the understanding of the average lay person.  Jackson, 2019 WL

2098991, at *10 (citing Frazier, 387 F.3d at 1262) (permitting expert testimony when the

---

[7]    Defendants acknowledge Alexander is generally permitted to testify as an accident reconstruction expert and should be permitted to testify on the technical data for the benefit of the jury.  Doc. 82 at 7.

testimony is explaining something "beyond the understanding of the average lay person"). Though Plaintiffs point to case law indicating Alexander's opinion as an accident reconstructionist is helpful generally, the cases do not address the specific issue in contention— whether Alexander can testify to the outcome had Defendant Carter chosen not to change lanes. Doc. 71 at 11.  As the cases Plaintiffs cite indicate, expert testimony on accident reconstruction is helpful to show what happened in a given accident.  However, Plaintiffs do not provide any case law suggesting when an accident reconstructionist testifies as to hypothetical options, this testimony is helpful.

"Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  Frazier, 387 at 1262– 63.  Counsel for Plaintiffs may argue during closing arguments if Defendant Carter had not changed lanes, Collision #2 would not have occurred.  However, the jury does not need an expert to understand this.  Accordingly, the Court **GRANTS** Defendants' Motion and Alexander's opinion that Defendant Carter could have avoided Collision #2 if he had not changed lanes is excluded.  Because Alexander's opinion on hypothetical avoidance opportunities is not helpful, the Court declines to address whether this opinion would confuse or mislead the jury.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion to Exclude Certain Opinions of Defendants' Proposed Expert James Sloan.  Doc. 60. Additionally, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Exclude Thomas W. Cauthen, Jr. as an Expert Witness, doc. 62, and **GRANTS in part** and **DENIES in**

**part** Defendants' Motion to Exclude Expert Testimony of Sean Alexander, doc. 63.

**SO ORDERED**, this 15th day of June, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA