# United States District Court
## for the Southern District of Georgia
## Brunswick Division

| | |
|---|---|
| VINCENT E. TUK, as surviving spouse of NANCY LEE TUK, deceased, | |
| Plaintiff, | 2:19-CV-134 |
| v. | |
| U.S. XPRESS, INC. and MICHAEL LYNN CARTER, | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| NATHAN CORRELL and CAITLYN CORRELL, | |
| Plaintiffs, | |
| | 2:19-CV-135 |
| v. | |
| U.S. XPRESS, INC. and MICHAEL LYNN CARTER, | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| COURTNEY CORRELL, | |
| Plaintiff, | |
| v. | 2:19-CV-136 |
| U.S. XPRESS, INC. and MICHAEL LYNN CARTER, | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JENNIFER CORRELL,

    Plaintiff,

v.

U.S. XPRESS, INC. and MICHAEL
LYNN CARTER,

    Defendants.

2:19-CV-162

## ORDER

Before the Court are Defendants' Motions for Partial Summary Judgment, which are identical in all four above-captioned related cases.  Case No. 2:19-CV-134, Dkt. No. 61; Case No. 2:19-CV-135, Dkt. No. 60; Case No. 2:19-CV-136, Dkt. No. 58; Case No. 2:19-CV-162, Dkt. No. 31 (the "Motion" or "Motions").[1]  For the reasons below, Defendants' Motions are **DENIED**.

### BACKGROUND

### I.  The Subject Collisions

These cases arise from a motor vehicle accident that occurred on Interstate 95 on November 27, 2017.  Dkt. No. 61-1 ¶ 1.  That evening, Plaintiff Jennifer Correll ("Mrs. Correll") was driving a white 2006 Dodge Ram south on I-95 through Glynn County, Georgia.  Id. ¶ 14, 15.  Plaintiff Nancy Tuk ("Mrs. Tuk"), Jennifer's mother,

---

[1] From here on, all docket citations throughout this Order refer to the Tuk case (2:19-cv-134).  All four of these related cases contain identical causes of action (with the exception of a wrongful death claim in Plaintiff Nancy Tuk's case) as well as identical Defendants and pleadings regarding the present motions.  See Dkt. No. 77 at 3 (Plaintiffs explaining that they refer only to the Tuk docket because "the same motions and other documents have also been filed in the companion cases").

was in the passenger seat of the Dodge, and Plaintiffs Courtney and Caitlyn Correll, Jennifer Correll's daughters, were in the back seat. Id. ¶¶ 15, 18, 23. The Tuk/Correll family lives in Waverly, which is just south of Glynn County in Camden County, Georgia, and Plaintiffs were on the way home from shopping in Brunswick, Georgia. Dkt. No. 58-31 at 9, 13, 22, 28, 29. While traveling southbound in the middle lane on I-95, the steering wheel of the Dodge Ram began shaking or vibrating in Mrs. Correll's hands. Id. at 36–37; Dkt. No. 61-1 ¶ 17. After about a minute of this, Courtney Correll said, "Mom, the truck is shaking." Dkt. No. 58-31 at 37; Dkt. No. 61-1 ¶ 18. The Dodge Ram had no known prior issues. Dkt. No. 58-31 at 40–41. Mrs. Correll moved over to the slow lane for a bit, then pulled over onto the shoulder of the interstate. Id. at 43–44; Dkt. No. 61-1 ¶¶ 19, 20. She brought the car to a stop, put it in park, turned the hazard lights on, and shut the car off. Dkt. No. 58-31 at 50–51; Dkt. No. 61-1 ¶ 21. Mrs. Correll got out and looked at the car's tires, saw nothing out of the ordinary, and discussed with her mother, Mrs. Tuk, whether they should continue driving home or get off at the next exit. Dkt. No. 61-1 ¶¶ 22, 23. After about five minutes on the shoulder of the interstate, Mrs. Correll decided to continue driving home. Id. ¶ 24; Dkt. No. 58-31 at 48–49.

Mrs. Correll turned the car back on, turned off her hazard lights, turned on her left turn signal, and looked over her left

shoulder to see if the road was clear before merging back into traffic. Dkt. No. 58-31 at 64; Dkt. No. 61-1 ¶¶ 25-26. Mrs. Correll "did not see anybody coming," so "slowly started merging in" to the slow lane, "[g]ot into the lane[,] and started accelerating." Dkt. No. 58-31 at 65, 70; Dkt. No. 61-1 ¶¶ 26. As Mrs. Correll was accelerating while in the far right-hand lane, she felt the steering wheel and truck start to shake again. Dkt. No. 58-31 at 75. Mrs. Correll says she put her hazard lights on again at this point, and about thirty seconds to a minute after she re-entered traffic, the first of two collisions occurred. Id. at 75-76. Arnaldo Gonzalez ("Gonzalez"), who was driving a tractor-trailer southbound on I-95, rear-ended Mrs. Correll's vehicle. Dkt. No. 61-1 ¶¶ 16, 28. Gonzalez says he suddenly saw the vehicle in front of him, that it did not have hazard lights on, and he immediately applied the brakes. Dkt. No. 58-23 at 15–17. The Correll vehicle was traveling about thirty to thirty-five miles-per-hour at the moment of impact; the posted speed limit was seventy. Dkt. No. 61-1 ¶¶ 30, 35. After Gonzalez's tractor-trailer rear-ended the Correll vehicle, Mrs. Correll lost control, regained control, and then came to a stop in the center lane. Id. ¶ 31.

Next, the second collision occurred: Defendant Michael Lynn Carter ("Carter"), who was driving another tractor-trailer southbound on I-95, collided with the Correll vehicle while it was

in the middle lane.  Id. ¶¶ 16, 33.  Carter had been driving behind

Gonzalez before the first collision, saw Gonzalez put on his turn

signal and apply his brakes, and thought Gonzalez was "having an

emergency."  Id. ¶¶ 38–40; Dkt. No. 77-1 ¶¶ 38–40.  Carter merged

into the center lane and then impacted the Correll vehicle.  Dkt.

No. 61-1 ¶¶ 41, 43; see also Dkt. No. 77-1 ¶¶ 41–42 (Plaintiffs

dispute Defendants' contention that Carter applied his brakes

before impacting the Correll vehicle).  Carter's tractor-trailer

drifted to the left side of the road, and the Correll vehicle came

to rest on the grass on the right shoulder of the highway.  Dkt.

No. 61-1 ¶¶ 44, 46; Dkt. No. 58-23 at 17.  Carter and Gonzalez

both exited their vehicles to check on the passengers in the

Correll vehicle; Carter called 911; and about twenty minutes later,

a Georgia State Patrol trooper arrived on the scene.  Dkt. No. 61-

1 ¶¶ 45, 47, 48; Dkt. No. 58-23 at 17.  The trooper interviewed

Carter and Gonzalez on the scene and later interviewed Mrs. Correll

at the hospital.  Dkt. No. 61-1 ¶¶ 50–53.  The trooper gave no

citations, did not believe that Carter could have avoided the

second collision, and concluded that Mrs. Correll's actions were

contributing factors in the accident.  Id. ¶¶ 54–57.  As a result

of the collision, Plaintiffs were severely injured; Mrs. Tuk

ultimately passed away.  Dkt. No. 77 at 8.

## II. Defendant Carter's Driving Record and Employment with Defendant USX

At the time of the collision, Defendant Carter was driving a 2017 Freightliner tractor for Defendant U.S. Xpress, Inc. ("USX"). Dkt. No. 66-1 ¶ 34. USX is incorporated under the laws of Nevada and has its principal place of business in Tennessee. Dkt. No. 1 ¶ 8; Dkt. No. 22 at 7. Before joining USX, Carter attended a truck driving school in Missouri from September to October 2016; he did not have experience driving a tractor trailer before this training. Dkt. No. 58-34 at 18, 33; Dkt. No. 61-1 ¶ 5. Carter's last traffic citation prior to his employment with USX was in 2012 for reckless driving related to speeding; no restrictions were put on Carter's license as a result of this citation, and USX was aware of the citation upon employing him. Dkt. No. 61-1 ¶¶ 7, 8; Dkt. No. 58-34 at 14; Dkt. No. 58-28 at 31. Carter finished at the top of his class in truck driving school, obtained his Commercial Driver's License, and then began working for USX in October 2016. Dkt. No. 61-1 ¶¶ 5, 6, 10; Dkt. No. 58-34 at 17–18. In March of 2017, while he was employed by USX,[2] Carter was cited for speeding in a construction zone. Dkt. No. 61-1 ¶ 12; Dkt. No. 72-1 at 42. Then, in June of 2017, Carter was involved in a preventable accident in a parking lot when he impacted a yellow pole while making a right-

---

[2] It is unclear whether Carter was driving a commercial vehicle for USX or a personal vehicle at the time of this citation. See Dkt. No. 61-1 ¶ 12.

hand turn driving a tractor trailer. Dkt. No. 61-1 ¶ 11. USX was aware of all three incidents. Dkt. No. 58-28 at 49–50. After the subject November 27, 2017 accident, Carter took three months off work for physical therapy and then continued to work for USX until about April 2019, when he left for family reasons. Id. at 18, 84.

### III. Procedural History

On November 8, 2019, three of these four sister cases were filed, including those of Plaintiff Vincent Tuk, as surviving spouse of Nancy Tuk, deceased (2:19-cv-134); Caitlyn Correll and Nathan Correll[3] (2:19-cv-135); and Courtney Correll (2:19-cv-136). The fourth case was filed by Jennifer Correll (2:19-cv-162) on the same day in the Superior Court of Glynn County, and Defendants removed that case to this Court on December 18, 2019. Case No. 2:19-cv-162, Dkt. Nos. 1, 1-1. The original defendants in all four cases were identical: Vika Logistics, LLC; Arnaldo Gonzalez; Starr Indemnity & Liability Co.; USX; USX Leasing, Inc., USX Enterprises, Inc.; Michael Lynn Carter; and Mountain Lake Risk Retention Group. Dkt. No. 1. On December 3, 2019, the parties filed a consent motion to dismiss as to defendants USX Leasing, USX Enterprises, and Mountain Lake Risk Retention Group, dkt. no. 20, which the Court granted, dkt. no. 21. Later, on July 28, 2020,

---

[3] Caitlyn's case was first filed redacted through her father, Nathan Correll, individually and as her next friend, because she was a minor at the time. See Case No. 2:19-cv-135, Dkt. No. 45 at 1. Caitlyn reached the age of majority during the pendency of the case and moved to substitute herself as a Plaintiff in addition to her father; the Court granted that motion on June 1, 2020. See id.; id at Dkt. No. 46.

the parties filed a stipulation of dismissal of defendants Vika Logistics, Gonzalez, and Starr Indemnity & Liability Co., dkt. no. 49, which the Court also granted, dkt. no. 50. Defendants Carter and USX are the only remaining Defendants. The following causes of action now remain in all four cases: negligence against Carter; liability of USX; attorney's fees against both Defendants; and punitive damages against both Defendants. Dkt. No. 1.[4]

On December 2, 2020, the parties filed three evidentiary motions: Plaintiffs' Motion to Exclude Certain Opinions of Defendants' Proposed Expert James Sloan, dkt. no. 60; Defendants' Motion to Exclude Thomas W. Cauthen, Jr. as an Expert Witness, dkt. no. 62; and Defendants' Motion to Exclude Expert Testimony of Sean Alexander, dkt. no. 63. The Magistrate Judge granted in part and denied in part all three evidentiary motions. Dkt. No. 93. The parties objected to the Magistrate Judge's order, dkt. nos. 94, 95, and this Court affirmed the order with one modification.

Defendants also filed the present Motion for Partial Summary Judgment in all four cases on December 2, 2020. Dkt. No. 61. In their Motion, Defendants move for summary judgment as to the following claims: USX's negligent hiring, qualification, training, entrustment, supervision, and retention; USX's failure to have appropriate policies and procedure in place; punitive damages; and

---

[4] As mentioned above, see supra n.1, the only cause of action that differs among the four cases is the wrongful death claim in Nancy Tuk's case. The wrongful death claim, however, is not at issue in the subject motion.

attorney's fees.  Dkt. No. 61-2 at 1.  Plaintiffs filed a response in opposition, dkt. no. 77, and Defendants filed a reply in support, dkt. no. 83.  The Court held a hearing on Defendants' Motion on April 12, 2021, dkt. no. 89, after which Plaintiffs filed a supplemental brief, dkt. no. 90.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). Factual disputes that are "irrelevant or unnecessary" are not sufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the

pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

Defendants move for summary judgment as to three general categories of causes of action: negligence, punitive damages, and attorney's fees.  Dkt. No. 61-2 at 1.  Each category will be addressed in turn.

## I.   Negligence

In their Complaint, Plaintiffs allege several different theories of liability against USX, only some of which are at issue in Defendants' request for summary judgment. *Not* at issue in the present Motion is Plaintiffs' allegation that USX is liable for Carter's negligent acts and omissions under the doctrine of respondeat superior[5] and/or the rules of agency. Dkt. No. 1 at 10–11. Those that *are* at issue are Plaintiffs' allegations that USX was independently negligent by hiring, qualifying, retaining, supervising, and entrusting Carter and by failing to have appropriate policies and procedures in place regarding routing and trip planning.[6] See id.; Dkt. No. 61-2 at 1. Further, Plaintiffs'

---

[5] Until November 2020, Georgia's Respondeat Superior rule provided that "if a defendant employer concedes that it will be vicariously liable under the doctrine of respondeat superior if its employee is found negligent, the employer is entitled to summary judgment on the plaintiff's claims for negligent entrustment, hiring, training, supervision, and retention, unless the plaintiff has also brought a valid claim for punitive damages against the employer for its own independent negligence." See Hosp. Auth. of Valdosta/Lowndes Cnty. v. Fender, 802 S.E.2d 346, 354 (Ga. Ct. App. 2017). The Court notes that the Supreme Court of Georgia recently held in Quynn v. Hulsey that the Respondeat Superior rule has been "abrogated by OCGA § 51-12-33," the Georgia apportionment statute, and the Court accordingly overruled all Georgia Court of Appeals cases holding otherwise. See 850 S.E.2d 725, 731-32 (Ga. 2020) (holding that Georgia's apportionment statute "mandates the jury be allowed to consider the fault of all persons who contributed to the alleged injury or damages" and thus "requires the elimination of the Respondeat Superior Rule"). Therefore, although Defendants admitted at the April 12 hearing that USX *is* responsible for Carter's negligence under respondeat superior, USX is *not* entitled to summary judgment on Plaintiffs' claims for negligent hiring, qualifying, retention, supervision, and entrustment.

[6] In their response to Defendants' Motion, Plaintiffs withdrew their negligent training claim. See Dkt. No. 77 at 4 n.3. Defendants' Motion is therefore **GRANTED** as to negligent training.

negligence claim against Defendant Carter is also not at issue in the present Motion.

## A. Negligent Hiring and Qualifying[7]

Plaintiffs contend USX was negligent in hiring Carter as a driver because of Carter's reckless driving citation in 2012. Dkt. No. 77 at 12–13. They argue that because USX had knowledge of the 2012 citation, "a jury could reasonably conclude that USX knew or should have known that Defendant Carter would not be a competent driver for the company." Id. Plaintiffs also argue that USX's hiring policies did not comply with the industry standards. Id. at 18. In support of this argument, Plaintiffs point to their expert witness, Thomas Cauthen, who opines that "hiring Defendant Carter was a breach of the industry standard regarding the hiring of safe and responsible drivers" because of Carter's 2012 reckless driving charge. Id. at 15–16. Mr. Cauthen believes USX's hiring guidelines "failed to comply with the industry standard" because USX "only required that the driver not have any reckless driving violations in the last three years." Id. Instead, Plaintiffs and Mr. Cauthen urge, a reckless driving violation within the last four years should also disqualify a potential employee from driving commercial vehicles. See Dkt. No. 62-2 at 2; Dkt. No. 62-3 at 5.

---

[7] At the April 12 hearing on Defendants' Motion, Plaintiffs explained that their negligent hiring and qualifying claims are one and the same; the Court will thus treat them as such.

Defendants, on the other hand, argue that USX was not negligent because "a single reckless driving citation based on speeding is insufficient to reasonably attribute a tendency of propensity of reckless driving to Carter," that Carter's pre-employment driving record "was sufficient to meet the qualification standards for employment" under the Department of Transportation's regulations, and that "USX's hiring policies met and/or exceeded all the FMCSR [Federal Motor Carrier Safety Regulations] compliance guidelines with respect to driver hiring." Dkt. No. 61-2 at 18. Defendants point out that the 2012 reckless driving citation occurred over three years prior to USX's hiring Carter and that Carter "graduated trucking school at the top of his class." Dkt. No. 83 at 5-6.[8] These facts, Defendants contend, "do not show that it can be reasonably concluded that USX knew or should have known that Carter was not suited for employment as a commercial truck driver, nor that it could reasonably foresee that Carter would be an incompetent driver." Id. at 6.

In Georgia, employers are "bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." O.C.G.A. § 34-7-20. Accordingly,

---

[8] Defendants also argue that Carter had "successfully obtained his tanker and HAZMAT licenses," dkt. no. 83 at 6, but the record is unclear as to whether Carter obtained those licenses before or after USX hired him. See Dkt. No. 58-34 at 24-25. If Carter obtained his tanker and HAZMAT licenses after USX hired him, these facts would obviously not be pertinent for a negligent hiring claim. However, this issue is not material for the purposes of this Motion because the outcome of Plaintiffs' negligent hiring and qualifying claims would be the same regardless of Carter's obtaining any such licenses prior to his hiring.

> a defendant employer has a duty to exercise ordinary
> care not to hire or retain an employee the employer knew
> or should have known posed a risk of harm to others where
> it is reasonably foreseeable from the employee's
> "tendencies" or propensities that the employee could
> cause the type of harm sustained by the plaintiff.

Munroe v. Universal Health Servs., Inc., 596 S.E.2d 604, 606 (Ga. 2004). Courts have denied summary judgment to defendant employers in cases where the employers "breach [their] own reasonable procedures," W. Indus., Inc. v. Poole, 634 S.E.2d 118, 122 (Ga. Ct. App. 2006) (citing Patterson v. Se. Newspapers, Inc., 533 S.E.2d 119, 122-23 (Ga. Ct. App. 2000)), and where the employers "disregard the federal regulations concerning the hiring of commercial truck drivers," Cooper v. Marten Transp., Ltd., No. 1:10-CV-03044-JOF, 2012 WL 12358220, at *5 (N.D. Ga. Feb. 23, 2012).

Here, Plaintiffs do not dispute that USX complied with its own procedures and federal regulations when it hired Carter in 2016. Plaintiffs also do not contend that USX should have, but failed to, discover any other incidents in Carter's record that would have demonstrated Carter's incompetence. Instead, Plaintiffs' negligent hiring claim focuses on the single reckless driving violation from 2012. Dkt. No. 77 at 13. The Court cannot say that, as a matter of law, this violation is insufficient to support a negligent hiring claim. Georgia courts have undoubtedly previously found a single driving violation sufficient to create a jury question as to negligent hiring. See, e.g., Poole, 634

S.E.2d at 122–23 (employer violated its own policy of obtaining a prospective employee's driving record which would have shown employee's single hit-and-run conviction and subsequent license suspension); Cherry v. Kelly Servs., Inc., 319 S.E.2d 463, 464 (1984) (employer failed to inquire further into employee's driving record after knowing of one traffic violation); see also Karr v. Celadon Trucking Servs., Inc., No. 1:16-CV-02587-LMM, 2017 WL 11084520, at *5 (N.D. Ga. Nov. 3, 2017) (employer did not comply with its own hiring policy by failing to investigate all past employers, an investigation which would have yielded discovery of employee's DUI arrest). Although Carter's 2012 reckless driving citation did not involve a license suspension and USX followed its own procedures and federal regulations, those facts do not mandate the conclusion that USX was *not* negligent in its hiring of Carter. Considering both the 2012 reckless driving citation and Mr. Cauthen's opinion that USX violated the industry standard, the question of negligent hiring is one for a jury's determination. Defendants' Motion for Summary Judgment as to Plaintiffs' negligent hiring and qualifying claims is therefore **DENIED.**

## B. Negligent Retention[9] and Supervision

Next, Plaintiffs claim that USX was also negligent in retaining Carter as an employee considering the incidents that occurred between his hiring in October 2016 and the subject incident in November 2017. Dkt. No. 77 at 13. Plaintiffs point out that Carter was cited for speeding in a construction zone on April 10, 2017 and involved in an accident on June 20, 2017;[10] they argue that these incidents, coupled with Carter's 2012 reckless driving violation, "are sufficient to create a jury issue as to whether USX acted reasonably when it continued to retain Carter." Id. at 14. Plaintiffs also argue that the speeding-in-a-construction-zone charge is particularly troubling because it is "a severe violation and assigned the highest point rating under the FMCSA safety violation system." Id. at 9 n.6. Plaintiffs again point to their expert, Mr. Cauthen, who opines "that USX's retention of Defendant Carter was also a breach of the industry standard" because of Carter's "additional negative driving experiences" while employed by USX. Id. at 16–17.[11]

---

[9] At the April 12 hearing on Defendants' Motions, Plaintiffs explained that their "failure to adopt appropriate policies and procedures" claim against USX falls within their negligent retention claim. The Court will therefore consider these two claims as simply one negligent retention claim.

[10] Plaintiffs state in their response brief that Carter "was involved in an accident on February 28, 2017" as well, but Defendants explained at the April 12th hearing that this accident was nonpreventable and does not implicate Carter's competence or alleged recklessness; Plaintiffs did not dispute this characterization. See Dkt. No. 77 at 8–9.

[11] Plaintiffs also claim that Carter "repeatedly violated federal safety regulations by falsifying his duty status records." Dkt. No. 77 at 20. However,

Defendants argue, however, that summary judgment is appropriate as to Plaintiffs' negligent retention claims because "[t]he three negative driving incidents from Carter's driving history . . . do not constitute sufficiently similar conduct to that which Carter engaged in when the Accident occurred." Dkt. No. 61-2 at 19. Defendants point out that Carter "was not speeding when the Accident occurred," that "USX was aware of only one citation that involved Carter driving a commercial vehicle," and that Carter "never caused an accident on a roadway." Id. Carter's prior driving incidents, Defendants argue, cannot show that USX knew or should have known that Carter had a tendency or propensity for reckless driving. Id. at 19–20.

The standard for negligent retention is the same as that of negligent hiring, except that the Court considers post-employment facts for a negligent retention claim. See Munroe, 596 S.E.2d at 606 ("[A] defendant employer has a duty to exercise ordinary care not to hire *or retain* an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's "tendencies" or propensities that the employee could cause the type of harm sustained by the plaintiff." (emphasis added)). The 2012 reckless driving charge and the two post-employment driving incidents are therefore

---

any falsifications of duty status records are unrelated to the accident at issue in this case, in which no party contends Carter fell asleep at the wheel or that sleep deprivation was a cause of the accident.

relevant to this claim. The two post-employment driving incidents—which occurred within one year after Carter's employment, within one year before the subject accident, and within three months of one another—suffice to create a jury issue as to Plaintiffs' negligent retention claim.

Defendants argue that the speeding citations are irrelevant to the accident at hand because Carter was traveling at 68 miles-per-hour in a 70 miles-per-hour zone when he collided with the Correll vehicle. Dkt. No. 61-2 at 19. However, Plaintiffs claim that Carter "acted recklessly and carelessly" when he impacted the Correll vehicle. See Dkt. No. 1 ¶ 58. A "reckless" driving charge involving speeding, a speeding-in-a-construction-zone charge, and a preventable accident are undoubtedly relevant to whether Carter had a propensity for dangerous driving. See Edwards v. Comtrak Logistics, Inc., No. 1:12-CV-1261-SCJ, 2014 WL 11820247, at *9 (N.D. Ga. Mar. 5, 2014) (explaining that the Court must consider employee's behavior that is "relevant to the injuries suffered by Plaintiff" for negligent supervision and retention claims). Plaintiffs also argued at the April 12th hearing that Carter should have pressed his brakes after seeing the "emergency situation" in front of him, and Defendants responded that there is a question as to whether slowing down would have, in fact, minimized Plaintiffs' injuries. The Court cannot say that, as a matter of law, these three driving incidents do *not* demonstrate Carter's propensity to

drive dangerously. The fact remains that USX knew Carter had a reckless driving citation in 2012, a speeding-in-a-construction-zone citation in March 2017, and a preventable accident in June 2017; these violations are numerous enough and bear sufficient similarity to the accident at issue such that their occurrences could have demonstrated to USX that Carter may pose a risk of harm to others while driving for USX.

Plaintiffs additionally claim that USX was negligent in its supervision of Carter based on those same driving incidents. Dkt. No. 77 at 14. Based on Carter's driving history, Plaintiffs argue, "Defendant USX was on notice that Defendant Carter was a reckless driver." Id. "For an employer to be held liable for negligent supervision, there must be sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." Barnes v. Smith, 794 S.E.2d 262, 264 (Ga. Ct. App. 2016) (quoting Novare Group, Inc. v. Sarif, 718 S.E.2d 304, 309 (Ga. 2011)). For the same reasons genuine issues of material fact exist as to Plaintiffs' negligent retention claim, summary judgment for USX is inappropriate as to Plaintiffs' negligent supervision claim. See, e.g., Remediation Res., Inc. v. Balding, 635 S.E.2d 332, 335 (Ga. Ct. App. 2006) (denying summary judgment as to negligent supervision where employee "had received

two speeding tickets and was involved in two minor car accidents"
in the past twenty-two years).

Defendants' Motion as to Plaintiffs' negligent retention and
supervision claims is therefore **DENIED**.

### C. Negligent Entrustment

Finally, Plaintiffs claim USX was negligent in its
entrustment of the tractor trailer to Carter. Dkt. No. 77 at 14–
15. Plaintiffs argue that Carter's driving history shows USX knew
of a pattern of reckless driving, and they contend "[f]or the same
reasons that Plaintiffs' claims for retention and supervision must
survive summary judgment, so too must Plaintiffs' claims of
negligent entrustment." Id. at 15. Defendants, however, argue
"the evidence fails to establish that Carter was incompetent by
reason of inexperience," that Carter's driving history "is
insufficient to establish that USX had actual knowledge that Carter
was incompetent by reason of a known pattern of reckless driving,"
and that Carter's driving incidents are "insufficiently similar,
too few and infrequent to constitute a 'series of serious driving
infractions.'" Dkt. No. 61-2 at 17 (emphasis removed) (quoting
Spencer v. Gary Howard Enters., Inc., 568 S.E.2d 763, 766 (Ga. Ct.
App. 2002), overruled on other grounds by TGM Ashley Lakes, Inc.
v. Jennings, 590 S.E.2d 807 (Ga. Ct. App. 2003)).

In Georgia, the doctrine of negligent entrustment provides:

a party is liable if he entrusts someone with an
instrumentality, with *actual* knowledge that the person

20

> to whom he has entrusted the instrumentality is
> incompetent by reason of his age or inexperience, or his
> physical or mental condition, or his known habit of
> recklessness.

Worthen v. Whitehead, 396 S.E.2d 595, 595 (Ga. Ct. App. 1990)

(quoting Gunn v. Booker, 381 S.E.2d 286, 290 (Ga. 1989)). "An

employer's knowledge of a series of serious driving infractions by

an employee can be sufficient to create an issue of fact on the

issue of negligent entrustment." Spencer, 568 S.E.2d at 766.

Further, "[i]t is only those prior acts or instances tending to

show the incompetency or habitual recklessness of the driver of

which the defendant-entrustor had actual knowledge which are

relevant, probative and therefore admissible in a negligent

entrustment action." Thomason v. Harper, 289 S.E.2d 773, 780 (Ga.

Ct. App. 1982).

Here, USX's undisputed knowledge of Carter's three prior

driving incidents—the 2012 reckless driving citation, the 2017

speeding-in-a-construction-zone citation, and the 2017 parking lot

accident—are relevant to Plaintiffs' negligent entrustment claim

for the same reasons they are relevant to Plaintiffs' negligent

retention and supervision claims. The Court cannot say, as a

matter of law, that these three driving violations over the course

of five years do not demonstrate habitual recklessness. See, e.g.,

Saunders v. Vikers, 158 S.E.2d 324, 327 (Ga. Ct. App. 1967) (four

DUI offenses over an unknown period of time, plus other non-driving

related arrests, "do not . . . eliminate the incompetency or

recklessness of the driver as an issue for jury consideration");
cf. Hobbs through Eagle v. Integrated Fire Prot., Inc., 850 S.E.2d
256, 267 (Ga. Ct. App. 2020) (one DUI offense and one failure to
maintain lane offense "are insufficient to establish [driver]'s
incompetence or a *pattern* of reckless driving"), reconsideration
denied (Nov. 18, 2020); Hicks v. Heard, 678 S.E.2d 145, 148 (Ga.
Ct. App. 2009) (one speeding citation and one citation for failure
to yield within the last two years are insufficient to establish
incompetence or a pattern of reckless driving), aff'd, 692 S.E.2d
360 (Ga. 2010); Spencer, 568 S.E.2d at 766 (one ten-year-old DUI
is insufficient to establish a pattern of recklessness); Upshaw v.
Roberts Timber Co., 596 S.E.2d 679, 683 (Ga. Ct. App. 2004) (one
sixteen-year-old speeding ticket, twenty-three-year-old DUI, and
one other speeding ticket "do[] not demonstrate a pattern of
reckless driving"); Marques v. Ross, 123 S.E.2d 412, 416 (Ga. Ct.
App. 1961) (two traffic tickets in ten years does not demonstrate
incompetence or habitual recklessness). Defendants' Motion as to
Plaintiff's negligent entrustment claim is therefore **DENIED.**

## II. Punitive Damages

Although Plaintiffs argue the applicability of punitive
damages only to Defendant USX in their response brief, Plaintiffs
made clear at the April 12th hearing that they also seek punitive
damages against Defendant Carter. Each Defendant will therefore
be addressed in turn.

## A. Defendant USX

In support of their claim for punitive damages against USX, Plaintiffs argue "there is ample evidence for a jury to reasonably conclude that Defendant USX knew, or through reasonable care should have known, that Defendant Carter was an unsafe driver . . . based on his prior reckless driving charge as well as the incidents during his first year of employment with USX." Dkt. No. 77 at 19. Defendants respond by arguing that "punitive damages do not survive summary judgment where the employer complied with federal regulations," such as here, and where "Plaintiffs' own expert, Cauthen, admitted that Carter's driving record did not preclude him from being hired or retained by USX pursuant to the guidelines and rules of the FMCSR." Dkt. No. 83 at 13. Defendants also note that Plaintiffs' argument as to whether USX "knew, or through reasonable care should have known" is based on the standard for negligence—not the standard for punitive damages. <u>Id.</u>

The Georgia Code provides that:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

O.C.G.A. § 51-12-5.1(b). "[T]he burden of establishing a punitive claim . . . is a high one." <u>N.H. by Harris v. Republic Servs. of Ga., Ltd. P'ship (De.)</u>, No. CV 215-161, 2017 WL 1013870, at *2 (S.D. Ga. Mar. 15, 2017). "Negligence, even if gross, will not

alone authorize the recovery of punitive damages; there must be circumstances of aggravation and outrage." Mastec N. Am., Inc. v. Wilson, 755 S.E.2d 257, 259 (Ga. Ct. App. 2014). To sustain a claim for punitive damages for negligent hiring, supervision, or retention, a plaintiff must show "that an employer had actual knowledge of numerous and serious violations on its driver's record, or at the very least, when the employer has flouted a legal duty to check a record showing such violations." Ortiz v. Wiwi, No. 3:11-CV-00033, 2012 WL 4468771, at *3 (M.D. Ga. Sept. 12, 2012) (quoting Poole, 634 S.E.2d at 121).

Here, although USX followed federal regulations and its own policies in hiring and retaining Carter, "th[o]se facts do not necessarily mean that [Carter] was a safe driver." La Croix v. Spears Mattress Co., No. 1:04-CV-1 (WLS), 2005 WL 1924712, at *3 (M.D. Ga. Aug. 10, 2005). USX's retention of Carter while knowing of his three relevant traffic violations in five years may well constitute negligence, and the Court cannot say, as a matter of law, that these circumstances are insufficient to justify punitive damages. Cases where Georgia courts have *granted* summary judgment for employers on punitive damages differ from this case in that they involve fewer prior driving violations or the employee's prior violations are not relevant to the subject accident. See, e.g., Bartja v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 463 S.E.2d 358, 362 (Ga. Ct. App. 1995) (employer complied with federal hiring

24

regulations and nothing in the record indicated employer knew employee "had a tendency to fall asleep at the wheel"); Bradford v. Xerox Corp., 453 S.E.2d 98, 99 (Ga. Ct. App. 1994) (employer had no reason to question employee's driving ability where there was "no evidence of any history of improper driving"); Mastec, 755 S.E.2d at 260 (although employee had "some moving violations," he had never been in an accident, was cited in his personal vehicle, and most recent violation was over three years old); Poole, 634 S.E.2d at 121 (employee had one hit-and-run conviction three years before subject collision); Lindsey v. Clinch Cnty. Glass, Inc., 718 S.E.2d 806, 808 (2011) ("[a]lthough there was evidence that [employee] had pattern of regularly talking on his mobile phone while driving," employee had no history of distraction-related accidents or traffic violations).

Instead, USX's knowledge of Carter's driving history more parallels cases where courts have *denied* summary judgment as to punitive damages against employers. See, e.g., Coker v. Culter, 431 S.E.2d 443, 444—45 (Ga. Ct. App. 1993) (employer knew employee "had received tickets for two traffic violations while driving a company vehicle" and failed to follow federal regulations which would have shown "several other traffic violations"); Hamlett v. Carroll Fulmer Logistics Corp., No. CV 415-001, 2016 WL 5844486, at *6 (S.D. Ga. Sept. 30, 2016) (employer acknowledged need to train employee but failed to do so after having knowledge of two

pre-hire accidents and one post-hire accident); La Croix, 2005 WL
1924712, at *3 (employee had three moving violations in six years,
one of which was in his personal vehicle); Cooper, 2012 WL
12358220, at *5 (employee had nine speeding citations in eight
years and employer reviewed employee's driving history for only
two years prior instead of, as federal regulations require, three);
see also City of Monroe v. Jordan, 411 S.E.2d 511, 513 (Ga. Ct.
App. 1991) (evidence of employee's "two previous on-the-job
automobile accidents . . . was relevant to the jury's determination
of whether [plaintiff] was entitled to an award of punitive
damages" against employer), overruled on other grounds by Sheriff
v. State, 587 S.E.2d 27 (Ga. 2003).  Looking at the facts in the
light most favorable to Plaintiffs, a jury may find that "that the
collision [here] result[ed] 'from a pattern or policy of dangerous
driving,'" and summary judgment is therefore inappropriate as to
punitive damages against USX.  Brooks v. Gray, 585 S.E.2d 188, 189
(Ga. Ct. App. 2003) (quoting Miller v. Crumbley, 548 S.E.2d 657,
659 (Ga. Ct. App. 2001)).

### B. Defendant Carter

Plaintiffs also contend that punitive damages are appropriate
against Defendant Carter.  Plaintiffs argued at the Motion hearing
that Carter's driving history supports such damages because he had
been told not to drive too fast; he kept doing so; and his driving
too fast for the conditions resulted in this accident.  Plaintiffs

further argue Carter's conduct preceding the subject accident supports punitive damages; because Carter (1) was traveling at his tractor trailer's "maximum governed speed of 68 miles per hour . . . with the throttle 100% engaged," (2) did not brake "until half a second before impact with Plaintiffs' vehicle, and (3) did not "lift[] his foot off the accelerator [until] at most two seconds before impact," Plaintiffs, contend, a jury should decide whether punitive damages against Carter are warranted. Dkt. No. 90 at 3-4.

As with USX, a reasonable jury may find that Carter's driving history preceding the subject accident and his conduct surrounding the accident justify punitive damages. While Georgia case law is clear that "punitive damages are not recoverable where the driver at fault simply violated a rule of the road," this case indisputably involves more than that. Brooks, 585 S.E.2d at 189 (quoting Miller, 548 S.E.2d at 659). "[E]vidence of similar acts or occurrences, or a bad driving record indicating wilfulness or reckless disregard of consequences, may become relevant to punitive damages" after liability has been found to exist. City of Monroe, 411 S.E.2d at 513 (quoting Whidby v. Columbine Carrier, 356 S.E.2d 709, 711 (Ga. Ct. App. 1987)). Therefore, based on the evidence of similar acts in Carter's driving history and Carter's conduct on the evening in question, a jury may find that Carter was in reckless disregard of the consequences. The

Court cannot say that punitive damages are inappropriate against Carter, as a matter of law, based on the evidence in the record. See <u>Fowler v. Smith</u>, 516 S.E.2d 845, 848 (Ga. Ct. App. 1999) (summary judgment denied as to punitive damages because driver stopped in the interstate without placing warning devices or turning lights on after dark); <u>Sommers v. Hall</u>, No. CV 408-257, 2010 WL 1963381, at *4 (S.D. Ga. May 13, 2010) (summary judgment denied as to punitive damages where driver parked in emergency lane instead of finding safer location to make a logbook entry).

Defendants' Motion is therefore **DENIED** as to Plaintiffs' claim for punitive damages.

### III. Attorney's Fees

Finally, Plaintiffs also seek attorney's fees on the basis of bad faith against both Defendants.

#### A. Defendant USX

Plaintiffs argue that attorney's fees are appropriate against USX because "USX breached the industry standards by hiring and retaining Carter." Dkt. No. 77 at 20. Whether attorney's fees should be granted for bad faith, they contend, "is a question for the jury" and is therefore inappropriate for resolution on summary judgment. Id. at 21. Defendants, however, argue that summary judgment as to attorney's fees is appropriate because USX "complied with the FMCSR when it hired and retained Carter" and Carter's hiring and retention "is not directly connected with the actual

transaction or incident as required by case law, [which is] a prerequisite to demonstrate bad faith." Dkt. No. 83 at 15.

O.C.G.A. § 13-6-11 allows attorney's fees only "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Plaintiffs here contend Defendants are liable for attorney's fees only on the basis of bad faith. In this context, "[b]ad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." Davis v. Walker, 655 S.E.2d 634, 639 (Ga. Ct. App. 2007) (quoting Wachovia Bank of Ga. v. Namik, 620 S.E.2d 470, 475 (Ga. Ct. App. 2005)). "Even slight evidence of bad faith can be enough to create an issue for the jury," and "[e]ven where there is a bona fide controversy as to liability, a jury may find that a defendant acted in the most atrocious bad faith in its dealing with the plaintiff." City of Lilburn v. Astra Grp., Inc., 649 S.E.2d 813, 816 (Ga. Ct. App. 2007) (quoting Freightliner Chattanooga v. Whitmire, 584 S.E.2d 724, 730 (Ga. Ct. App. 2003) and Com. & Mil. Sys. Co., Inc. v. Sudimat, C.A., 599 S.E.2d 7, 12–13 (Ga. Ct. App. 2004)). "Specifically, 'the element of bad faith . . . pertains to the transaction and dealings out of which the cause of action arose, not to the defendant's conduct after the cause of action arose.'" Id. (quoting Morrison Homes of Fla. v.

Wade, 598 S.E.2d 358, 361 (Ga. Ct. App. 2004)). "Questions concerning bad faith . . . are generally for the jury to decide." Sudimat, 599 S.E.2d at 13 (citing Garrett v. Women's Health Care of Gwinnett, P.C., 532 S.E.2d 164 (2000)).

The same evidence that creates a jury issue as to punitive damages precludes summary judgment on Plaintiffs' attorney's fees claims. If a jury could find that USX's knowledge of Carter's driving history creates a presumption of "conscious indifference to consequences," then a jury could also find that USX engaged in a "conscious doing of wrong" by retaining Carter while it had that knowledge. See Herring v. Berkshire Hathaway Homestate Ins. Co., No. 1:18-CV-4711-WMR, 2020 WL 6135654, at *7 (N.D. Ga. Sept. 24, 2020) (denying summary judgment as to attorney's fees because employer did not comply with required background and driver's history tests).

### B. Defendant Carter

Plaintiffs argue attorney's fees are also appropriate against Defendant Carter because "Carter repeatedly violated federal safety regulations by falsifying his duty status records." Dkt. No. 77 at 20. Plaintiffs further contend attorney's fees are appropriate against Carter for the same reasons punitive damages are appropriate: namely, Carter's driving history and conduct on the evening in question, including Carter's traveling at the maximum governed speed of his vehicle, his failure to brake until

a half-second before impact, and his failure to take his foot off the accelerator until two seconds before impact. Dkt. No. 90 at 4.

Although any alleged falsification of duty status records is inapposite to the subject accident and therefore not relevant to attorney's fees, see supra n.11, Carter's prior driving history and alleged conduct surrounding the subject accident preclude summary judgment as to attorney's fees, just as it does for punitive damages. A jury may find that Carter, aware of his recent history of multiple driving violations, engaged in a "conscious doing of wrong" by continuing to drive commercial vehicles and by traveling at his vehicle's maximum speed until two seconds before the subject impact. See Holland v. Cypress Ins. Co., No. 2:17-CV-120, 2019 WL 9465895, at *5-6 (N.D. Ga. Oct. 22, 2019) (denying summary judgment as to punitive damages and attorney's fees on the basis of bad faith where driver misrepresented his medical conditions and may have had a pattern of dangerous driving); Metro. Atlanta Rapid Transit Auth. v. Morris, 779 S.E.2d 726, 731 (Ga. Ct. App. 2015) (finding jury could conclude driver acted in bad faith by fleeing the scene of an accident).

Defendants' Motion for Summary Judgment as to Plaintiffs' claims for attorney's fees is therefore **DENIED.**

**CONCLUSION**

Accordingly, Defendants' Motions for Partial Summary Judgment, Case No. 2:19-CV-134, Dkt. No. 61; Case No. 2:19-CV-135, Dkt. No. 60; Case No. 2:19-CV-136, Dkt. No. 58; Case No. 2:19-CV-162, Dkt. No. 31, are **DENIED** in their entirety.

**SO ORDERED**, this 12th day of July, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA